# SLATER v. SALT LAKE CITY et al.

No. 7222.   Decided May 14, 1949.   (206 P. 2d 153.)

See 15· C. J. S., Commerce, sec. 54; 12 Am. Jur. 140. Municipal regulation of street sales, note, 163 A. L. R. 1334.

*Robert S. Richards* and *T. Q. Cannon*, both of Salt Lake City, for appellant.

*E. R. Christensen, Homer Holmgren* and *A. Pratt Kesler*, all of Salt Lake City, for respondent.

LATIMER, Justice.

Appeal from a judgment of dismissal founded on a ruling of the district court sustaining respondents' general demurrer to appellant's complaint for failure to state a cause of action.

In view of the fact that the case was decided on demurrer, we are required to accept the allegations of fact in the complaint as being true. From these allegations it appears that appellant represents certain publishing companies in several states and transacts business under the name and style of International Publishers Service. He carries on his business from Los Angeles, California, by sending his agents into this and various other states to solicit subscriptions to certain national publications. In the Salt Lake City area his agents were operating upon the public streets and sidewalks in the business district and in areas such as doorways and entranceways immediately abutting thereon. As pedestrians walked along the sidewalk or entered entrances into buildings, they were approached by salesmen of appellant and requested to purchase a subscription to one of the magazines. If the prospec-

tive customer indicated an unwillingness to converse with the solicitor, according to the allegations of the complaint, the matter was pressed no further and each went on his way. If a person approached indicated a willingness to listen to the solicitor's sales message, the agent suggested that they move to the edge of the sidewalk or against the building to clear the sidewalk for pedestrian traffic. The selling activities of appellant's agents were limited to soliciting subscriptions to magazines for future delivery and the magazines were not sold directly to the passerby. Salt Lake City enacted a certain ordinance permitting the sale of articles in the residential districts of the city but prohibited their sale within the area generally classified as the business district. Selling of subscriptions to magazines was one of the activities prohibited in the business district and appellant's agents, in violation of the ordinance, carried on their sales campaign in the prohibited area. The Salt Lake City Police in attempting to prevent appellant's agents from operating contrary to the provisions of the ordinance arrested certain of the agents while they were carrying on their activities. The police department threatened to continue its efforts to prevent appellant's agents from selling in the manner alleged and to escape further prosecution appellant commenced this action in the court below to have the ordinance declared invalid and unconstitutional. As part of the relief requested, he sought to enjoin the Salt Lake City officers from enforcing the ordinance.

This appeal is brought for the purpose of seeking a reversal of the holding of the trial court by which it refused to enjoin the officers from interfering with appellant's activities.

The ordinance involved in this proceeding is Section 3652 of the Revised Ordinances of Salt Lake City, Utah. The part particularly called to our attention by the allegations of the complaint, is as follows:

" 'It shall be unlawful for any person to peddle or offer for sale, barter or exchange at retail, any garden or farm produce, fruits,

butter, eggs, poultry, fish, game or any other goods, wares or merchandise whatsoever, or a [sic] any tickets, coupons or receipts representing value or redeemable in service, photographs, works of art, magazine subscriptions, goods or merchandise whatsoever, in, upon or along any street of Salt Lake City without first obtaining a license so to do.

" 'It shall be unlawful for any person, under any circumstances, to peddle, sell or offer for sale any magazine subscriptions, goods, wares or merchandise whatsoever, in, upon or along any of the following streets, to wit:

" 'South Temple street from Second East street to First West street; First South street from Second East street to First West street; Second South street from Second East street to First West street; Third South street from Second East street to First West street; Fourth South street from Second East street to First West street; State street from First North street to Fifth South street; Main street from First North street to Fifth South street; and no license shall be granted to any person to peddle in, upon or along the said streets above described * * *.'

"Violations of said ordinance are made punishable by arrest and imprisonment, under provisions of section 3718 of the said Revised Ordinances of Salt Lake City, Utah."

Appellant's argument in support of his assertion that the ordinance is unconstitutional is advanced under four separate propositions. That the ordinance herein involved is unconstitutional because (1) it imposes a burden upon interstate commerce; (2) it is an infringement on the right of free speech; (3) it is void because of being arbitrary, capricious and not founded on a reasonable classification; and (4) assuming the ordinance to be valid, then by the discriminating enforcement appellant is denied equal protection of the law.

The first contention made by appellant must be overruled. It is not every incidental interference with interstate commerce that gives rise to a claim of unconstitutionality. Matters which are largely local in character can be dealt with by the state, even though the regulations, in some degree, interfere with the free flow of commerce between the states. The ordinance does

not provide for an absolute prohibition of the sale of magazines—it merely provides for regulation. It permits the sale in certain portions of the city but prohibits their sale upon the streets in the congested business district. It has for its purpose the retention of the sidewalks for the use intended and deals with a local matter largely within the concern of those charged with running the affairs of Salt Lake City. The right to regulate traffic on streets and sidewalks is within the powers delegated to the city by this state and reasonable restrictions in no way offend against the Commerce Clause. Controlling traffic on the city streets does not materially obstruct the free flow of commerce and if, perchance, the burden is increased the amount of increase is inconsequential.

The United States Supreme Court in the case of *California* v. *Thompson,* 313 U. S. 109, 61 S. Ct. 930, 932, 85 L. Ed. 1219, disposes of a similar contention in the following language:

"As this Court has often had occasion to point out, the Commerce Clause, in conferring on Congress power to regulate commerce, did not wholly withdraw from the states the power to regulate matters of local concern with respect to which Congress has not exercised its power, even though the regulation affects interstate commerce. Ever since *Willson* v. *Black Bird Creek Marsh Co.,* 2 Pet. 245, 7 L. Ed. 412, and *Cooley* v. *Board of Wardens,* 12 How. 299, 13 L. Ed. 996, it has been recognized that there are matters of local concern, the regulation of which unavoidably involves some regulation of interstate commerce, but which because of their local character and their number and diversity may never be adequately dealt with by Congress. Because of their local character, aso, there is wide scope for local regulation without impairing the uniformity of control of the national commerce in matters of national concern and without materially obstructing the free flow of commerce which were the principal objects sought to be secured by the Commerce Clause. Notwithstanding the Commerce Clause, such regulation in the absence of Congressional action has, for the most part, been left to the states by the decisions of this Court, subject only to other applicable constitutional restraints. See cases collected in *DiSanto* v. *Pennsylvania,* supra, 273 U. S. [34], 40, 47 S. Ct. [267], 269, 71 L. Ed. 524 [528]."

In a very recent case the United States Supreme Court in *Railway Express Agency, Inc., et al.,* v. *People of New York,* 336 U. S. 106, 69 S. Ct. 463, 466, reaffirmed the rule in the following language:

"It is finally contended that the regulation is a burden on interstate commerce in violation of Art. I, § 8 of the Constitution. Many of these trucks are engaged in delivering goods in interstate commerce from New Jersey to New York. Where traffic control and the use of highways are involved and where there is no conflicting federal regulation, great leeway is allowed local authorities, even though the local regulation materially interferes with interstate commerce. The case in that posture is controlled by *South Carolina State Highway Department* v. *Barnwell Bros.,* 303 U. S. 177, 187 et seq., 58 S. Ct. 510, 514, 82 L. Ed. 734. And see *Maurer* v. *Hamilton,* 309 U. S. 598, 60 S. Ct. 726, 84 L. Ed. 969, 135 A. L. R. 1347."

Paraphrasing the wording of the latter case, where pedestrian control and the use of sidewalks are involved and where there is no conflicting federal regulation, great leeway is allowed local authorities, even though the local regulations materially interfere with interstate commerce. The regulation imposed by Salt Lake City does not materially interfere with commerce and is within permissible limits of authority granted local authorities.

Appellant's second contention that the ordinance abridges or infringes on the constitutional guarantee of freedom of speech must likewise be overruled. It matters little whether we follow the philosophy of Mr. Justice Reed as announced in the case of *Kovacs* v. *Cooper,* 336 U. S. 77, 69 S. Ct. 448, 453, or the philosophy announced by Mr. Justice Frankfurter in the same case, as we reach the same goal. Mr. Justice Reed places the constitutional right of freedom of speech in a preferred position, or on a higher plane than other rights, while Mr. Justice Frankfurter takes a contrary view. However, both agree that regardless of its position, the right is subject to reasonable regulation. We quote the following words from Mr. Justice Reed's decision in that case:

"Of course, even the fundamental rights of the Bill of Rights are not absolute. The Saia case [*Saia* v. *New York,* 334 U. S. 558, 68

S. Ct. 1148, 1149], recognized that in this field by stating 'The hours and place of public discussion can be controlled.' It was said decades ago in an opinion of this Court delivered by Mr. Justice Holmes, *Schenck* v. *United States*, 249 U. S. 47, 52, 39 S. Ct. 247, 249, 63 L. Ed. 470, that:

" 'The most stringent protection of free speech would not protect a man in falsely shouting fire in a theatre and causing a panic. It does not even protect a man from an injunction against uttering words that may have all the effect of force.'

"Hecklers may be expelled from assemblies and religious worship may not be disturbed by those anxious to preach a doctrine of atheism. The right to speak one's mind would often be an empty privilege in a place and at a time beyond the protecting hand of the guardians of public order."

Quoting again from the same decision, we set forth further reasons given by the Supreme Court to sustain the rule that freedom of speech can be reasonably regulated:

"The right of free speech is guaranteed every citizen that he may reach the minds of willing listeners and to do so there must be opportunity to win their attention. This is the phase of freedom of speech that is involved here. We do not think the Trenton ordinance abridges that freedom. It is an extravagant extension of due process to say that because of it a city cannot forbid talking on the streets through a loud speaker in a loud and raucous tone. Surely such an ordinance does not violate our people's 'concept of ordered liberty' so as to require federal intervention to protect a citizen from the action of his own local government. Cf. *Palko* v. *Connecticut*, 302 U. S. 319, 325, 58 S. Ct. 149, 152, 82 L. Ed. 288. Opportunity to gain the public's ears by objectionably amplified sound on the streets is no more assured by the right of free speech than is the unlimited opportunity to address gatherings on the streets. The preferred position of freedom of speech in a society that cherishes liberty for all does not require legislators to be insensible to claims by citizens to comfort and convenience. To enforce freedom of speech in disregard of the rights of others would be harsh and arbitrary in itself. That more people may be more easily and cheaply reached by sound trucks perhaps borrowed without cost from some zealous supporter, is not enough to call forth constitutional protection for what those charged with public welfare reasonably think is a nuisance when easy means of publicity are open. * * *"

While the two preceding cases deal with non-commercial enterprises, there are additional reasons why the right of

free speech cannot be used as a shield to protect commercial activities carried on in streets or on sidewalks. In the case of *Valentine* v. *Chrestensen*, 316 U. S. 52, 62 ■ S. Ct. 920, 921, 86 L. Ed. 1262, the Supreme Court of the United States passed directly on the question of the right of a city to prohibit the distribution of commercial advertising matter. Mr. Justice Roberts, speaking for the court in that case, states the rule to be as follows:

"This court has unequivocally held that the streets are proper places for the exercise of the freedom of communicating information and disseminating opinion and that, though the states and municipalities may appropriately regulate the privilege in the public interest, they may not unduly burden or proscribe its employment in these public thoroughfares. We are equally clear that the Constitution imposes no such restraint on government as respects purely commercial advertising. Whether, and to what extent, one may promote or pursue a gainful occupation in the streets, to what extent such activity shall be adjudged a derogation of the public right of user, are matters for legislative judgment. The question is not whether the legislative body may interfere with the harmless pursuit of a lawful business, but whether it must permit such pursuit by what it deems an undesirable invasion of, or interference with, the full and free use of the highways by the people in fulfillment of the public use to which streets are dedicated. If the respondent was attempting to use the streets of New York by distributing commercial advertising, the prohibition of the code provision was lawfully invoked against his conduct."

The District Court of Appeals, First District of California, in the case of *Ex parte Mares*, 75 Cal. App. 2d 798, 171 P. 2d 762, 764, considered the validity of an ordinance which prohibited solicitations of magazine subscriptions on the streets of San Francisco, California, and held that commercial soliciting could be prohibited on the streets of the city. Mr. Justice Goodell, speaking for the court, states the reason for the holding as follows:

" 'The place for the conduct of a private business is upon private property; and it has been said that there is no vested right to do business upon the public streets.' *Pittsford* v. *City of Los Angeles*, 50 Cal. App. 2d 25, 32, 122 P. 2d 535, 538, and see text therein quoted and cases cited. 'It is well established law that the highways

of the state are public property; \* \* \* and that their use for purposes of gain is special and extraordinary, which, generally at least, the legislature may prohibit or condition as it sees fit [citations.]' *Stephenson* v. *Binford,* 287 U. S. 251, 264, 53 S. Ct. 181, 184, 77 L. Ed. 288, 294, 87 A. L. R. 721. 'Use of a public street for private enterprise may under some circumstances redound to the public good; but nevertheless it is a special privilege peculiarly subject to regulation, and one which may be granted on reasonable terms or entirely withheld [citations].' *People* v. *Galena,* 24 Cal. App. Supp. 2d 770, 775, 70 P. 2d 724, 727. \* \* \* Numerous authorities support these statements."

In the case of *Packard* v. *Banton,* 264 U. S. 140, 44 S. Ct. 257, 259, 68 L. Ed. 596, 597, the United States Supreme Court dealt with the problem of the use of streets for commercial purposes. Mr. Justice Sutherland in delivering the opinion of the court announced the following principles:

"The contention most pressed is that the act unreasonably and arbitrarily discriminates against those engaged in operating motor vehicles for hire in favor of persons operating such vehicles for their private ends, and in favor of street cars and motor omnibuses. If the state determines that the use of streets for private purposes in the usual and ordinary manner shall be preferred over their use by common carriers for hire, there is nothing in the Fourteenth Amendment to prevent. *The streets belong to the public and are primarily for the use of the public in the ordinary way. Their use for the purposes of gain is special and extraordinary, and, generally at least, may be prohibited or conditioned as the Legislature deems proper.* \* \* \*" (Italics ours.)

That cities may prohibit sidewalks from being used for commercial purposes without running afoul of the constitutional right of free speech, is further emphasized by the decisions in those cases which deal with the right of religious organizations to distribute leaflets, pamphlets and circulars on city streets. In a series of cases the United States Supreme Court has held that ordinances which make it unlawful for any person to circulate or distribute all noncommercial handbills on municipal streets is unconstitutional. However, in practically all cases, that court has reserved from the holding the legality of an ordinance which at-

tempts to control or regulate commercial soliciting or advertising. In the case of *Schneider* v. *State of New Jersey, Town of Irvington*, 308 U. S. 147, 60 S. Ct. 146, 152, 84 L. Ed. 155, the Supreme Court passed on an ordinance of the Town of Irvington, New Jersey, which prohibited the distribution and circulation of handbills, circulars and other matter. In the same opinion, similar ordinances of the City of Los Angeles, California, City of Milwaukee, Wisconsin, and the City of Worcester, Massachusetts, were dealt with. In each case, the ordinance was held unconstitutional but in concluding his opinion, Mr. Justice Roberts, speaking for the court, said:

"We are not to be taken as holding that commercial soliciting and canvassing may not be subjected to such regulation as the ordinance requires. Nor do we hold that the town may not fix reasonable hours when canvassing may be done by persons having such objects as the petitioner. Doubtless there are other features of such activities which may be regulated in the public interest without prior licensing or other invasion of constitutional liberty. We do hold, however, that the ordinance in question, as applied to the petitioner's conduct, is void, and she cannot be punished for acting without a permit."

In view of these opinions, we conclude that the ordinance which deals solely with commercial enterprises is not unconstitutional because it unreasonably interferes with the right of free speech.

Appellant next contends the ordinance is discriminatory and in violation of the equal protection clause of the Federal Constitution. His contention being that while the first paragraph of the ordinance prohibits the sale of many items upon or along any street of Salt Lake City without first obtaining a license, the second paragraph of the ordinance which deals with the congested area, deals only with selling coupons redeemable in magazine subscriptions, goods, wares and merchandise. Appellant relies on the rule that by referring to many items in the first part of the ordinance and not referring to all in the second part, the ordinance can reasonably be construed to permit the sale of all items in the business district except those

items expressly prohibited in the second paragraph. Appellant seeks to bolster this argument by calling our attention to other ordinances of Salt Lake City but the other ordinances are not pleaded and are not properly before this court. We do not take judicial notice of municipal ordinances. See *State* v. *Butcher,* 74 Utah 275, 279 P. 497.

The ordinance permits a licensed vender to sell magazine subscriptions in any part of Salt Lake City except the congested area and we, therefore, do not concern ourselves with the first paragraph of the ordinance, except as a grant to use the sidewalks for commercial purposes. If there is any discrimination as against appellant, it comes by virtue of the latter part of the ordinance which prohibits persons from selling coupons, tickets or receipts redeemable in magazine subscriptions or goods, wares and merchandise within the business district. If this is a reasonable classification for the district, then appellant has not been discriminated against unconstitutionally.

Appellant has not alleged the city ordinance which deals with the right to sell newspapers in the business district, and has not alleged any specific activitiy of organizations which are affiliated with religious organizations or veterans' organizations such as American Legion, Veterans of Foreign Wars and Disabled American Veterans, who occasionally sell poppies on the street. We, however, assume these matters are before us, for the reason they have been repeatedly referred to and discussed by all parties in connection with appellant's claim that the ordinance is unjust and discriminatory and it is common knowledge that selling of newspapers, religious literature, imitation poppies and forget-me-nots is carried on in the business district.

This court has passed on the constitutionality of statutes and ordinances and has tested them by the rule of unjust discrimination. In *State* v. *Mason,* 94 Utah 501, 78 P. 2d 920, 117 A. L. R. 330; *Broadbent et al.* v. *Gibson,*

105 Utah 53, 140 P. 2d 939; and *Walberg et al.* v. ■■■■ *Utah Public Welfare Comm., et al.,* 115 Utah 242, 203 P. 2d 935, we discussed the elements necessary to render a statute or ordinance unconstitutional because of discrimination. Discrimination is the essence of classification and does violence to the constitution only when the basis upon which it is founded is unreasonable. In fixing the limits of the class, the legislative body has a wide discretion and this court may not concern itself with the wisdom or policy of the law. Our function is to determine whether an enactment operates equally upon all persons similarly situated. If it does then the discrimination is within permissible legislative limits. If it does not, then the differentiation would be without reasonable basis and the act does not meet the test of constitutionality.

We first consider the exemptions granted to the selling of newspapers, religious literature, poppies and other merchandise when the proceeds go to charity.

In the case of *City of Chicago* v. *Rhine,* 363 Ill. 719, 2 N. E. 2d 905, 908, 105 A. L. R. 1045, the Supreme Court of Illinois held constitutional a statute which prohibited the sale of articles on the sidewalks of the area generally known and referred to as the "loop district." In that case newspapers were excepted from the provisions of the act and it was contended that this exception made the ordinance discriminatory. The court in that case overruled the contention and announced the rule to be as follows:

"The defendant earnestly insists that because the ordinance permits the sale of daily newspapers within the prohibited districts the ordinance is thereby unconstitutional. In taking up this phase of the case we should glance for the moment at the position of the defendant who is attacking the constitutionality of the ordinance. He is seeking to carry out his private commercial enterprise for his own personal financial profit, on the streets within the loop district, one of the forbidden domains. Although he may have, prior to the passage of the ordinance, pursued his calling on the streets, his use thereof was solely a permissive one. He had no inherent right to operate his business in or upon the streets of the city. *People* v. *Thompson,* supra, [341 Ill. 166, 173 N. E. 137]; *People* v. *Wolper,*

350 Ill. 461, 183 N. E. 451; *People* v. *Clean Street Co.*, 225 Ill. 470, 80 N. E. 298, 9 L. R. A., N. S., 455, 116 Am. St. Rep. 156; *Wade* v. *Nunnelly*, 19 Tex. Civ. App. 256, 46 S. W. 668; *Rosa* v. *City of Portland*, 86 Or. 438, 168 P. 936, L. R. A. 1918B, 851; *Greene* v. *City of San Antonio*, Tex. Civ. App., 178 S. W. 6; *West* v. *City of Waco*, 116 Tex. 472, 294 S. W. 832. That some one else is given the privilege of selling newspapers (a commodity not within the same class as the article the defendant was exposing for and offering for sale) did not constitute an unconstitutional discrimination against him. The classification made by the city by which daily newspapers were exempt from the operation of the ordinance was valid. *People* v. *Thompson*, supra; *Rosa* v. *City of Portland*, supra; *Philadelphia* v. *Brabender*, 201 Pa. 574, 51 A. 374, 58 L. R. A. 220."

In practically all ordinances dealing with this subject, the city authorities have exempted the sale of newspapers. Over a period of many years both courts and legislatures have recognized that the corner newsboy is in a class by himself. The sale of newspapers on a downtown street corner has grown into an accepted custom and has become a public service by making the news events of the day available to all. Many local residents and out-of-town visitors and tourists in the city desire to obtain the news at the earliest possible time and the service afforded by the newspaper boys is one which is beneficial to a large segment of the public. We need not express an opinion regarding the value or service of magazines. Neither need we determine whether they serve a purpose similar to that of the newspaper because the sale of magazines is not prohibited by the ordinance. What is prohibited is the sale of a subscription to a magazine for delivery in the future. No immediate news benefit to the public can be derived from the sale of a subscription to a person who may not receive the magazine for some weeks or even months thereafter. To permit the selling of newspapers and prohibit the selling of subscriptions to magazines is not such an arbitrary exercise of discretion and not such an unreasonable classification as to label the ordinance void.

The ordinance is not unconstitutional because it does not prohibit religious organizations from dispensing re-

ligious literature in the prohibited area. Over a period of years the United States Supreme Court has held ordinances void which attempt to prohibit organizations such as "Jehovah's Witnesses," "Gospel Assembly" and other similar religious organizations from using the streets to further their cause. In the case of *Jamison* v. *Texas*, 318 U. S. 413, 63 S. Ct. 669, 672, 87 L. Ed. 869, a member of the Jehovah's Witnesses was convicted of distributing handbills on the streets of Dallas, Texas. Mr. Justice Black delivered the opinion of the court and he points out the difference in the case of a commercial enterprise and the dissemination of religious information by handbills. We quote the rule as set out by him:

"The state can prohibit the use of the street for the distribution of purely commercial leaflets, even though such leaflets may have 'a civic appeal, or a moral platitude' appended. *Valentine* v. *Chrestensen*, 316 U. S. 52, 55, 62 S. Ct. 920, 922, 86 L. Ed. 1262, [1265]. They may not prohibit the distribution of handbills in the pursuit of a clearly religious activity merely because the handbills invite the purchase of books for the improved understanding of the religion or because the handbills seek in a lawful fashion to promote the raising of funds for religious purposes."

Perhaps the protection thrown around the religious worker springs from a desire to protect what has long been considered an appropriate method of disseminating religious information. The spreading of one's religious beliefs through the distribution of literature is an age-old type of evangelism with as high a claim to constitutional protection as the more orthodox type of preaching from the pulpit. When dealing with religious liberty, it is necessary to embrace two concepts. Freedom to believe and freedom to act. The first is absolute and all courts have protected this right. The constitution guarantees the right to speak freely on religious subjects and protects him who spreads the doctrines of a religious organization whether he preaches from the pulpit or from the soap box or disseminates the information by leaflet, booklet or tract subject to reasonable regulation. If there is discrimination in

favor of religious organizations it is not such as to render the ordinance unconstitutional. The exception permitted to veterans' organizations likewise does not render the ordinance invalid. The sale of poppies is not a profit making venture and is conducted for the welfare of previous members of the armed forces or their families. The mere fact that a city permits its sidewalks to be used for charitable projects does not require that it also permits its sidewalks to be used for the purpose of selling one's own goods. In the case of *Railway Express Agency* v. *People of State of New York,* supra, the Supreme Court of the United States held a city had the authority to differentiate between an advertiser of his own product and an advertiser of third person's merchandise. In that portion of the opinion of the court dealing with the equal protection of the law the rule is stated in the following language:

"The question of equal protection of the laws is pressed more strenuously on us. It is pointed out that the regulation draws the line between advertisements of products sold by the owner of the truck and general advertisements. It is argued that unequal treatment on the basis of such a distinction is not justified by the aim and purpose of the regulation. It is said, for example, that one of appellant's trucks carrying the advertisement of a commercial house would not cause any greater distraction of pedestrians and vehicle drivers than if the commercial house carried the same advertisement on its own truck. Yet the regulation allows the latter to do what the former is forbidden from doing. It is therefore contended that the classification which the regulation makes has no relation to the traffic problem since a violation turns not on what kind of advertisements are carried on trucks but on whose trucks they are carried.

"That, however, is a superficial way of analyzing the problem, even if we assume that it is premised on the correct construction of the regulation. The local authorities may well have concluded that those who advertised their own wares on their trucks do not present the same traffic problem in view of the nature or extent of the advertising which they use. It would take a degree of omniscience which we lack to say that such is not the case. If that judgment is correct, the advertising displays that are exempt have less incidence on traffic than those of appellants."

Mr. Justice Jackson in a concurring opinion, discusses the difference between carrying on any business for hire

and engaging in the same activity on one's own. He poses and answers the question in the following language:

"The question in my mind comes to this. Where individuals contribute to an evil or danger in the same way and to the same degree, may those who do so for hire be prohibited, while those who do so for their own commercial ends but not for hire be allowed to continue? I think the answer has to be that the hireling may be put in a class by himself and may be dealt with differently than those who act on their own. But this is not merely because such a discrimination will enable the lawmaker to diminish the evil. That might be done by many classifications, which I should think wholly unsustainable. It is rather because there is a real difference between doing in self interest and doing for hire, so that it is one thing to tolerate action from those who act on their own and it is another thing to permit the same action to be promoted for a price."

If a classification based on so fine a distinction as that permitted in the *Railway Express Agency, Inc., et al.* v. *People of New York,* supra, can be sustained, then sales made by religious and charitable organizations can be constitutionally differentiated from those selling activities carried on for private profit.

Assuming without deciding that the ordinance permits sightseeing bus companies to sell trip tickets on the sidewalks of the business area, this does not require a holding that the classification is unreasonable. It is within the province of the city fathers to determine whether some conveniences can be afforded tourists or out-of-town visitors. Because some financial benefit may be realized by local sightseeing companies being permitted sidewalk sales, does not deny the petitioner equal protection of the law. There may be a valid and reasonable distinction based on the following: Less interference with pedestrians by sellers of bus tickets; their locale of selling is usually not in the most congested intersections; and, the sightseeing ticket seller can be reasonably differentiated from the magazine subscription seller. There is clearly a distinction between one who sells tickets for an immediate sightseeing trip around the town and one who sells maga-

zines to be delivered in the future. This question was answered in the *Ex parte Mares* case, supra, and we quote the following holding from that case:

"(9, 10) The petitioner claims that the ordinance is discriminatory in that it prohibits solicitation for future deliveries while permitting it for immediate deliveries. The difference between the handling of an immediate sale, where the pedestrian knows what he wants beforehand, and the routine necessarily involved in halting a pedestrian, arresting his attention, 'selling' him the idea of becoming a subscriber, and then filling out an order blank and getting his signature on the dotted line, is so palpable as to require no elaboration. The two operations are as distinct as those involved in door-to-door solicitation (which is not prohibited) and sidewalk solicitation. The ordinance plays no favorites among or within the class of persons similarly situated, but operates uniformly upon them. *People* v. *Sullivan*, 60 Cal. App. 2d 539, 541, 141 P. 2d 230, supra; 18 Cal. Jur. 827; 12 Am. Jur. 144; it draws no line between magazines published within the city or state and those published elsewhere. Cf. *In re Robinson*, 68 Cal. App. 744, 230 P. 175; it simply prohibits the solicitation of sidewalk traffic for future delivery, by anybody and everybody alike and at all times. It therefore is not a all within the cases cited by petitioner, for here there is a valid and reasonable ground of distinction with nothing arbitrary about it. (See 5 Cal. Jur. 860, sec. 213; *People* v. *St. John*, 108 Cal. App. Supp. 779, 789, 790, 288 P. 53; *Sieroty* v. *City of Huntington Park*, 111 Cal. App. 377, 380, 295 P. 564."

The last and most difficult question to be disposed of is the challenge made by appellant that by authorizing the sale of tickets, coupons or receipts redeemable in photographs or works of art and denying the sale of receipts or coupons redeemable in magazines renders ██ the ordinance unjustly discriminatory. Assuming appellant correct in his contention that the taking of photographs and the subsequent sale of pictures is not prohibited by the ordinance (and this construction is apparently conceded by the city), and that coupons redeemable in either photographs or works of art is likewise not prohibited, is the classification so unreasonable and unrealistic as to be unconstitutional? If there is a reason for such classification it is obscure and appears to us to be more fanciful than real.

Were we only concerned with the wisdom of the legislation or the policy to be adopted by the city commissioners, we would not substitute our judgment for theirs and by that means invalidate the act. However, if we are unable to find any reasonable basis for the classification, then we cannot sustain the enactment. In testing the present ordinance, we accept the standards set out by Mr. Justice Wolfe in his concurring opinion in the case of *Wallberg* v. *Utah Public Welfare Comm. et al.,* supra [203 P. 2d 947]:

"There must be a reasonable basis for the differentiation between that class made subject to the lien condition as compared with the class not subjected to it which basis must bear a *reasonable* relation to the purposes to be accomplished by the imposition of the condition. If those subjected to the condition are similarly situated to those free from the condition, the differentiation would be without basis and hence arbitrary and therefore unconstitutional. The important, and perhaps somewhat tricky words in the above passage, is the word, 'reasonable', and the phrase, 'similarly situated.' * * *"

If we first consider the purposes to be accomplished by the act, we find that magazine subscription sellers are no different than sellers of coupons redeemable in photographs or works of art. All use the streets for commercial purposes; all impede the free flow of pedestrian traffic; all accost and annoy pedestrians; all are selling articles for future delivery; all are in competion with merchants who own or lease private property for carrying on similar business; and all need the same right of regulation or prohibition. Giving consideration to the discretion vested in city commissioners, we are unable to discover a difference of sufficient importance to cause the commission to conclude that the classes could be treated differently and yet have the purposes of the act accomplished.

It may be admitted that under certain circumstances, sellers of subscriptions to magazines are a different class than sellers of coupons redeemable in other merchandise. However, under the circumstances of this case, we conclude they are similarily situated. The sidewalks belong to the public and should be restricted for pedestrians and for pub-

lic uses. If, however, private enterprises are to be permitted to barter or sell on the streets, then the same rights and privileges must be accorded to all those engaged in carrying on businesses which are similarly situated. For an ordinance to permit sellers of coupons redeemable in photographs or works of art to sell their wares and in the same enactment prohibit magazine subscriptions from being sold, is preferring one class over another, merely because the coupon entitles the purchaser to obtain a different item. Just as well permit the sale of coupons redeemable in shirts and prohibit the sale of coupons redeemable in ties. Unless there is some substantial difference in the classes, one class of merchants should not be permitted to use the sidewalks for private gain and another class denied the same right. Equality of treatment rather than discrimination should be the object of the ordinance.

This court has repeatedly passed on municipal ordinances and has invalidated them when there has been unreasonable discrimination. Just so long as city commissioners insist upon writing unwarranted exemptions into the ordinance must the enactments fail. Equality of treatment of classes similarly situated must be maintained. And even though an exemption granted may be temporary, a preference extended for a short period of time undermines the foundation upon which equal protection of the law is premised.

We do not pass on plaintiff's last contention to the effect that the law is unjustly and discriminatorily enforced. Admittedly the city has not enforced the ordinance against those people excluded by the terms of the act. If the exclusion was reasonable then the enforcement would not be discriminatory. Having held the exclusion unreasonable the enforcement or lack of enforcement is immaterial to this decision. We do, however, mention that the only complaint made by appellant is that the agents of Salt Lake City do not enforce the ordinance against the classes mentioned in this opinion.

Even though we hold the second paragraph of the enactment unconstitutional, we affirm the trial court in refusing to enjoin the Salt Lake City officers from enforcing other provisions of the ordinance. This, for the reason that plaintiff does not allege he has obtained a license to ■ sell in any part of the city, rather he negatives the obtaining of a license by alleging he is willing to obtain any necessary license if the act is sustained. The first part of the ordinance is valid and not having alleged compliance therewith, plaintiff may be subject to prosecution for transacting business without having obtained the necessary license therefor.

The judgment is affirmed for the reasons stated. The parties to bear their own costs.

PRATT, C. J., and WADE, and McDONOUGH, JJ., concur.

WOLFE, Justice (concurring).

The question of whether persons are similarly situated must be resolved in the light of the exigencies to be served by the act. The following examples of the successively widening circles of inclusion should suffice to illustrate this. If the purpose of an ordinance were to prevent the streets from being littered by banana peels which are dangerous to pedestrians, a classification which prohibits the sale of bananas alone from trucks on the street or from stands on the sidewalk would probably be a constitutional classification unless experience furnished evidence that there were other fruits or vegetables, portions of which were commonly discarded on the spot and which were equally or nearly as dangerous underfoot as banana skins, in which case the prohibition might be required to encompass them. If the prohibition were for the purpose of preventing generally the discard of all peelings or food stuffs on the street, for reasons of sanitation or cleanliness, it would be directed to fruits and vegetables generally. If, however, the purpose were to facilitate traffic, a more inclusive classification

might be required to subserve that purpose. If to prevent competition with businesses required to pay rentals, a still more inclusive classification as to street transactions might be required. Always the classification must be viewed in the light of the purposes of the legislation. And if we can conceive of any exigency or exigencies which could reasonably be met by the prohibition we must assume that the legislation was passed for those purposes and test the constitutionality of the act accordingly.

I can conceive that soliciting magazine subscriptions might take more time and therefore more likely impede pedestrian traffic on the sidewalks than would the selling of some coupons or receipts redeemable in certain goods or services according to the reasoning of the case of *In re Mares* quoted from in the main opinion, but that might require such fine distinctions between the services or goods for which various coupons were sold or receipts given as to make the administration of the ordinance unworkable. Hence, I agree that the sale of such coupons and receipts evidencing a right to redeem in service or goods are for practical purposes in the same class as the selling of magazine subscriptions on the sidewalks. I therefore concur.