310 P.2d 735

Lloyd D. SUTTON, Harvey L. Randall, Gale V. Barney and Paul Annella, a copartnership, doing business under the name and style of Blue Flame Coal Company, Plaintiffs and Respondents,

v.

Nick MARVIDIKIS, Faye Olson, Claron Golding, Malio Pecorelli, Frank Sacco, and all others engaged in the picketing of the coal mine of the Blue Flame Coal Co., and United Mine Workers of America, Defendants and Appellants.

No. 8587.

Supreme Court of Utah.

May 3, 1957.

240

---

Edward Sheya, Price, for appellants.

S. J. Sweetring, Price, for respondents.

HENRIOD, Justice.

Appeal from temporary and permanent injunctions against *all* picketing at an approach road to a coal mine operated by the plaintiff partners, who, other than themselves, had no employees. Affirmed as to the temporary injunction, reversed as to that portion of the permanent injunction which prohibited peaceful picketing, and reversed as to the denial of the motion to dismiss as to defendants, Pecorelli and Sacco. No costs awarded.

Reviewing this case in the light of principles this court has announced in Stanley v. Stanley [1] and recognizing that the highly extraordinary and drastic injunctive procedure most sparingly and cautiously should be employed, it appears that a fair appraisal of believable facts reflected in the record is as follows:

In January, 1956, one Odendahl operated a coal mine with 8 employees, 2 of whom later became pickets at the mine's approach, and 3 of whom became partners with one Sutton under a lease from Odendahl. All

8 had joined the defendant union whose agents thereafter approached Odendahl to negotiate a contract containing the usual provisions along with a requirement that Odendahl pay 40¢ per ton to the U.M.W. This contract, said Odendahl, would break him, so rather than accept it, he went out of business, leasing the mine to the plaintiffs who operated the same as partners under a written partnership agreement, without any employees. This arrangement the trial court found bona fide as against defendants' claim of sham, defendants' counsel conceding, however, that such claim could not be supported by the evidence,— and we cannot conclude other than did the trial court.

In February, 2 of the 8 employees mentioned joined with stranger pickets from other areas in picketing the road leading to the mine. Evidence, if believed, indicated that plaintiffs and independent coal truckers would have had to run over pickets stationed in the middle of the road in order to get to the mine. They were told that "You hadn't better go up there," "We had orders to come up here and stop you" and in response to a suggestion by Sutton that he would get the sheriff, he was told, "Well, you better go get him." The only time pickets refrained from stopping them was on a day when at least 60 pounds of roofing nails had been strewn along the road by unidentified persons and when a bridge approaching the mine was damaged by an

1. 97 Utah 520, 94 P.2d 465.

explosion. Two or three weeks after the temporary injunction had been granted, one of the known pickets, by rifle fire, punctured the radiators of trucks belonging to two independent truckers who had been hauling coal from the mine.

It seems reasonable to believe that under such circumstances the fuel was available to feed a conflagration of violence and bloodshed which would require but the application of a torch by a thoughtless, emotional or reckless person,—such that peaceful picketing could have been nothing but a concomitant of a whole volatile scene fraught with danger from which such picketing hardly could have been divorced.

Defendants urge that 1) no temporary or 2) permanent injunction should have been granted under the facts of this case because of the constitutional guaranty of free speech, 3) that prevailing anti-injunction statutes precluded injunctive relief here, 4) that the court lacked jurisdiction since part of the mine's products found its way into the interstate commerce stream making this a case where the area of labor disputes or unfair labor practices was pre-empted under Federal statutes, and 5) that it was error not to have granted the motion to dismiss the case as to defendants, Pecorelli and Sacco.

■ As to 1) the temporary injunction, it seems to us that the court displayed wis-dom in *temporarily* enjoining *all* picketing in view of the sensitive and inflammatory circumstances engendered by the picketing, it being rather apparent that peaceful and coercive picketing were inseparable under the circumstances extant at the time of the temporary injunction.

■ As to 2) the contention no permanent injunction against peaceful picketing should have been given, we agree. Hearing on the permanent injunction took place in July, more than 4 months after the temporary injunction, the ending of picketing and the last threat or act of violence. No showing was made that peaceful picketing in July and thereafter would result in damage, irreparable or otherwise, to anyone, save the pickets themselves, perhaps, since few citizens traveled the road who could have been informed as to the Union's grievances, and there were no employees who could be persuaded to join the union, making it appear that peaceful picketing at the remote spot where the pickets gathered would be more or less a waste of time.

■ We recognize that peaceful picketing is not immune to all controls of state police power, but we continue to espouse the principle we have announced[2] that except in unusual circumstances peaceful picketing is an adjunct of free speech guaranteed by both the State[3] and Federal[4]

2. International Union of Operating Engineers Local No. 3 v. Utah Labor Relations Board, 115 Utah 183, 203 P.2d 206.

3. Art. I, Secs. 1 and 15, Utah Constitution.
4. U. S. Constitution, 1st and 14th Amendments.

242

Constitutions. We are not about to join the apparent flight from such principle that seems to have been the wont of some courts.[5] We refer the reader to the Operating Engineers case for our views on the subject.

■■ In answer to defendants' contention 3) that the court had no jurisdiction to entertain injunctive relief because of prevailing anti-injunction legislation applicable where a labor dispute arises, we believe and hold that there was no labor dispute here. Under the federal statutory definition of a labor dispute it is not necessary that the disputants stand in the proximate relation of employer and employee,[6] and though there may be some confusion as to the Utah statutory definition, the earlier definition, which is still found in the laws, does not require the existence of the employer-employee relationship.[7] However, the courts have decisively concluded, and we affirm, that for a labor dispute to come under the provisions of the anti-injunction statutes the controversy in question must at least bear upon the employer-employee relationship. The U. S. Supreme Court supported this view with the following language:

"We recognize that by the terms of the statute there may be a 'labor dispute' where the disputants do not stand in the proximate relation of employer and employee. But the statutory classification, however, broad, of parties and circumstances to which a 'labor dispute' may relate does not expand the application of the Act to include controversies upon which the employer-employee relationship has no bearing."[8]

Any other interpretation would lend serious doubt as to the constitutionality of such statutes.

The state statutes similarly have been interpreted.[9]

Since the partnership in question has been found to be bona fide, and since the mine was operated completely by the partners, the employee-employer relationship was not in issue and no labor dispute existed. The anti-injunction statutes were therefore not applicable in this case and the court below was not precluded from issuing its injunction.

■ As to defendants' contention 5) that Federal legislation has pre-empted the field and excluded state courts from taking

5. 5 Utah Law Review 98.
6. 29 U.S.C.A. § 113(c).
7. 34–1–34 U.C.A.1953, cf. 34–1–2(9) U. C.A.1953.

8. Columbia River Packers Association, Inc., v. Hinton, 315 U.S. 143, 62 S.Ct. 520, 522, 86 L.Ed. 750.
9. See Lo Bianco v. Holt, 189 Misc. 113, 70 N.Y.S.2d 33, and Sweeney v. Goolst, Sup., 91 N.Y.S.2d 579.

jurisdiction in these labor disputes, the simple answer is that if they be accompanied by threat, coercion, violence and the like, states may move to prevent such activity. Such conclusion has been stated clearly by the U. S. Supreme Court in a case in which our own Attorney General participated as amicus curiæ in defense of such state right,[10] the court saying:

"The dominant interest of the State in preventing violence and property damage cannot be questioned. It is a matter of genuine local concern. Nor should the fact that the Union commits a federal unfair labor practice while engaging in violent conduct prevent States from taking steps to stop the violence. * * *

"The States are the natural guardians of the public against violence. It is the local communities that suffer most from the fear and loss occasioned by coercion and destruction. We would not interpret an Act of Congress to leave them powerless to avert such emergencies without compelling directions to that effect."

Finally, 6) not to dismiss the action against Pecorelli and Sacco would be to lend comfort to suspicion and would ignore the record which reflects little except the

admonition by those two defendants that any picketing indulged should be carried out peacefully.

McDONOUGH, C. J., and CROCKETT and WADE, JJ., concur.

WORTHEN, J., concurs in result.

---

10. United Automobile, Aircraft and Agricultural Implement Workers of America v. Wisconsin Emp. Rel. Bd., 351 U.S. 266, 76 S.Ct. 794, 799, 100 L.Ed. 1162; see also United Mine Workers of America v. Golden Cycle Corp., Colo.1956, 300 P.2d 799.