STATE of Utah, Plaintiff and Respondent,

v.

Robert JORDAN, Jr., Defendant and Appellant.

STATE of Utah, Plaintiff and Respondent,

v.

Robert JORDAN, Jr. and Terry L. Fullmer, Defendants and Appellant.

Nos. 18235, 18236.

Supreme Court of Utah.

May 26, 1983.

Michael D. Esplin, Provo, W. Andrew McCullough, Orem, for defendants and appellants.

David L. Wilkinson, Atty. Gen., Earl F. Dorius, Asst. Atty. Gen., Salt Lake City, for plaintiff and respondent.

HOWE, Justice:

The defendants appeal their convictions for sexual exploitation of a minor.

Based upon information received from a confidential police informant, a search warrant was issued in November of 1981 for the search of defendants' residence for the presence of child pornography and other evidence of sexual exploitation of a minor. A subsequent daylight search of their home resulted in the seizure of a number of nude photographs depicting one or both of the defendants and a minor in simulated sexual conduct. Unexposed film, flash cubes, a cloth sack and a General Electric color television set were also confiscated during the search. Defendants were charged with sexual exploitation of a minor "in that they knowingly and intentionally used, per-

suaded, induced or enticed _____, a minor, to pose in the nude while simulating sexual conduct for the purpose of photographing, filming, recording, or displaying sexual or simulated sexual conduct" in violation of U.C.A., 1953 (1981 Supp.), § 76–10–1206.5.

Defendants advance three grounds for appeal: (1) the unconstitutionality of the statute; (2) the defectiveness of the search warrant; and (3) failure to grant them a hearing to determine whether the material seized was pornographic.

### I.

Defendants challenge the constitutionality of the statute on three separate determinants, viz., it is overbroad, invades their right to privacy, and is void for vagueness. We examine these elements in that order.

Section 76–10–1206.5 provides:

Sexual exploitation of minors. (1) A person is guilty of sexual exploitation of a minor who knowingly employs, uses, persuades, induces, entices or coerces any minor to pose in the nude for the purpose of sexual arousal of any person or for profit or to engage in any sexual or simulated sexual conduct for the purpose of photographing, filming, recording or displaying in any way the sexual or simulated sexual conduct.

▇▇▇ 1. Defendants contend that the statute is overly broad in contravention of free speech guaranteed by the First and Fourteenth Amendments of the United States Constitution. They also contest its validity on the basis that it sweeps within its ambit behavior not actionable under the test of legal obscenity laid down in *Miller v. California,* 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973). Both of these points were extensively discussed in the recent decision of *New York v. Ferber,* —— U.S. ——, 102 S.Ct. 3348, 73 L.Ed.2d 1113 (1982) which is dispositive here on several points. It is a rule of long standing both in our jurisdiction and under constitutional principles that in order to be secure within the pale of the First Amendment, behavior must be expressive or it remains unprotected. *Miller v. California,* supra; *Ginsberg v.*

*New York,* 390 U.S. 629, 88 S.Ct. 1274, 20 L.Ed.2d 195 (1968); *Erznoznik v. City of Jacksonville,* 422 U.S. 205, 95 S.Ct. 2268, 45 L.Ed.2d 125 (1975); *West Gallery v. Salt Lake City Bd. of Com'rs.,* Utah, 586 P.2d 429 (1978); *Sutton v. Marvidikis,* 6 Utah 2d 238, 310 P.2d 735 (1957); and *Slater v. Salt Lake City,* et al., 115 Utah 476, 206 P.2d 153 (1949). Where conduct is not communicational in nature, but falls instead, as here, into a category of conduct circumscribed by laws enacted for the public welfare, a different yardstick altogether applies. If it can be shown that the statute under attack has a rational relationship to safeguarding minors from harm, it will stand. *Ginsberg v. New York,* supra. Once that relationship has been established the specific provisions of the statute will not be found offensive to constitutional guarantees of the First and Fourteenth Amendments. *Prince v. Commonwealth of Massachusetts,* 321 U.S. 158, 64 S.Ct. 438, 88 L.Ed. 645 (1944). That principle was eloquently restated in *New York v. Ferber,* supra:

The scope of the First Amendment overbreadth doctrine, like most exceptions to established principles, must be carefully tied to the circumstances in which facial invalidation of a statute is truly warranted. Because of the wide-reaching effects of striking a statute down on its face at the request of one whose own conduct may be punished despite the First Amendment, we have recognized that the overbreadth doctrine is "strong medicine" and have employed it with hesitation, and then "only as a last resort." *Broadrick* [*v. Oklahoma*] 413 U.S. [601] at 613 [93 S.Ct. 2908, 2916, 37 L.Ed.2d 830]. We have, in consequence, insisted that the overbreadth involved be "substantial" before the statute involved will be invalidated on its face. *Id.* —— U.S. at ——, 102 S.Ct. 3361, 73 L.Ed.2d at 1130.

▇▇▇ Here the prohibited conduct is not pure speech. It involves the production of visual recordings using minors under a penal statute dealing generally with pornographic and harmful materials and performances, and specifically with sexual exploitation of minors. The defendants' con-

tention that nudity per se, and thus diaper commercials on the public airwaves, could be swept within the ambit of the statute, is not well taken. The language used "to pose in the nude" is clearly modified by three qualifying purposes: (1) sexual arousal, or (2) profit, or (3) engaging in sexual or simulated sexual conduct. Defendants were charged under the latter category. The great majority of the exhibits before us leaves no doubt in our minds that the trial court properly found the depiction to be simulated sexual conduct.

■■■ Defendants nonetheless claim that they have standing to attack the constitutionality of the term "for profit" appearing in the statute and contend that that broad language renders the statute invalid on its face, even though their conduct could have been constitutionally proscribed by a narrowly drawn statute. We disagree. Without discussing the issue of whether defendants may rightfully bring such a claim before this Court subsequent to a conviction, or whether they should have brought that claim in the nature of an action for injunctive or declaratory relief, we briefly touch upon the demerit of their argument. The rule still stands that where defendants were not charged with an activity, the adjudication of that activity, though encompassed under the sanctions of the statute, must await a real controversy. *New York v. Ferber,* supra, —— U.S. at ——, 102 S.Ct. at 3360, 73 L.Ed.2d at 1129, and cases cited therein. *State v. Vlacil,* Utah, 645 P.2d 677 (1982) (Oaks, J., concurring). The exception to that rule comes into play where overbroad language has a "chilling effect" upon privileged action and constitutes a disincentive so strong that it results in an in terrorem effect within the protection of First Amendment rights. And the standard is high:

> The exception is justified by the overriding importance of maintaining a free and open market for the interchange of ideas. Nevertheless, if the statute's deterrent effect on legitimate expression is not "both real and substantial," and if the statute is "readily subject to a narrowing construction by the state courts," see *Erznoznik v. City of Jacksonville,* 422 U.S.

205, 216, 45 L.Ed.2d 125, 95 S.Ct. 2268, [2276] the litigant is not permitted to assert the rights of third parties.

*Young v. American Mini Theatres,* 427 U.S. 50, 96 S.Ct. 2440, 49 L.Ed.2d 310 (1976); see also *Broadrick v. Oklahoma,* 413 U.S. 601, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973). In addition, courts have allowed the exception where a constitutional issue could be tested by way of injunctive or declaratory relief where the privileged conduct had been proscribed as to others and the complaining party was contemplating similar conduct. See *Doran v. Salem Inn, Inc.,* 422 U.S. 922, 95 S.Ct. 2561, 45 L.Ed.2d 648 (1975); see generally Note, The First Amendment Overbreadth Doctrine, 83 Harv.L.Rev. 844 (1970).

Here the alleged overbroad language in the statute can be narrowly construed, given the context in which it appears, and we do not think that this case lends itself to an adjudication of hypothetical claims not before us. In short, the sexual exploitation of minors is not protected expression of speech, precluding us from invoking the exception to avoid any "chilling effect" of the language. The defendants were not charged with using the minor to pose in the nude for profit, and they cannot rely upon the exception to test that proscribed conduct as it affects others. Moreover, were that offensive part removed from the statute, the defendants would still find themselves charged as before. The guideline as to standing under those circumstances has been nicely put in a metaphor: "When a line of excision is available, one standing within the zone which a truncated statute might reach may be barred from setting up the statute's overbreadth as to others." Note, supra, at 909.

■■■ The contention advanced by defendants that the conduct and resulting depiction must meet the *Miller* standard of obscenity was expressly addressed in *New York v. Ferber,* supra. In refusing to apply that standard in child pornography cases, the *Ferber* court fashioned a discrete test from that enunciated in *Miller.* It reiterated the need for some element of scienter on

the part of the defendant. *Id.* —— U.S. at ——, 102 S.Ct. at 3358, 73 L.Ed.2d at 1127. The Utah statute passes that test: "A person ... who *knowingly* employs ..." The stated offense "must be limited to works that *visually* depict sexual conduct by children below a specified age." *New York v. Ferber,* supra, —— U.S. at ——, 102 S.Ct. at 3358, 73 L.Ed.2d at 1127. [Emphasis in original.] Again, as applied to these defendants, that test is met. The defendants took photographs of a fifteen year old minor. The category of interdicted "sexual conduct" must also be limited and described. *Id.* "Sexual conduct" is defined under § 76–10–1201(7) as:

> [a]cts of masturbation, sexual intercourse, or any touching of a person's clothed or unclothed genitals, pubic area, buttocks, or, if the person is a female, breast, whether alone or between members of the same or opposite sex or between humans and animals in an act of apparent or actual sexual stimulation or gratification.

Once the statute has passed muster on those constitutional requirements, "[t]he *Miller* formulation is adjusted in the following respects: A trier of fact need not find that the material appeals to the prurient interest of the average person; it is not required that sexual conduct portrayed be done so in a patently offensive manner, and the material at issue need not be considered as a whole." *New York v. Ferber,* supra, —— U.S. at ——, 102 S.Ct. at 3358, 73 L.Ed.2d at 1127. The trial court in this case found that both defendants were aware that the minor was under 18 years of age and concluded that the element of scienter was thus satisfied. We find no error in its judgment.

■■■■■ 2. Defendants claim that the statute's reach is tantamount to an invasion of their privacy. But that sophistic argument ignores the fact that we are not dealing here with conduct between two consenting adults in the privacy of their own home which is protected under our laws. *Stanley v. Georgia,* 394 U.S. 557, 89 S.Ct. 1243, 22 L.Ed.2d 542 (1969). The rights to privacy guaranteed by the Fourteenth Amendment include "the personal intimacies of the home, the family, marriage, motherhood, procreation, and child rearing [citations.]" *Paris Adult Theatre I. v. Slaton,* 413 U.S. 49, at 65, 93 S.Ct. 2628, at 2639, 37 L.Ed.2d 446 at 462 (1973). The constitutional rights of the minor are not before us; her sexual exploitation by defendants is. That exploitation is validly proscribed by the state which has a compelling interest in the healthy development of its youth during the years of their greatest vulnerability. It has a legitimate concern that such exploitation may result in physical or psychological impairment and that depictions as those before us might return to haunt the mature adult. The statute affords protection against that. The defendants contend that the state has no right to prohibit acts done between consenting people in the privacy of their homes which do not amount to the promotion of obscenity. Although there may be merit in that argument, we part company where they involve the state's minor children whose health, safety, morals and general welfare the state has a legitimate interest to promote and protect. See also *Prince v. Commonwealth of Mass.,* supra.

■■■■ 3. Defendants next claim that the phrase "simulated sexual conduct" is so vague that a person of ordinary understanding cannot guess at its meaning, and that it is therefore a denial of due process under the Fourteenth Amendment to convict them when the punishable conduct is not clearly defined. We disagree.

Inasmuch as the phrase "sexual conduct" is defined, § 76–10–1201(7), supra, the only word capable of misconstruction would be "simulated." As it does not constitute a legal term of art, it is recognizable in simple lay terms as "looking or acting like." Webster's New Collegiate Dictionary (1976) defines the term as "to assume the outward qualities or appearance of [usually] with the intent to deceive." The disputed language is thus sufficiently clear to convey "warning as to the proscribed conduct when measured by common understanding and practices. The Constitution requires no more."

*U.S. v. Petrillo,* 332 U.S. 1, at 8, 67 S.Ct. 1538, at 1542, 91 L.Ed. 1877 (1947) at 1883.

■ The exhibits before the trial court constituted competent evidence that could have resulted in a finding, beyond a reasonable doubt, that the defendants used the minor to engage in simulated sexual conduct. The defendants' ability to portray simulated sexual conduct would tend to indicate their ability to understand the meaning of that term. We therefore do not accede to their argument that the word is not precisely defined so as to apprise them of the proscribed conduct. Words are symbols of communication and as such are not invested with the quality of a scientific formula. It is enough that they can be construed with reasonable certainty. Beyond that it suffices to add that "one who deliberately goes perilously close to an area of proscribed conduct shall take the risk that he may cross the line." *Boyce Motorlines v. U.S.,* 342 U.S. 337, 340, 72 S.Ct. 329, 331, 96 L.Ed. 367, 371 (1952).

## II.

Defendants next challenge the validity of the search warrant on two grounds: (1) The affidavit was insufficient to support the issuance of a search warrant because it was based on hearsay and not on personal knowledge of the affiant. Also, the reliability of the informant was stated in conclusive terms. (2) The search warrant itself was constitutionally defective because it did not describe with specificity the items sought to be seized but left the decision to the discretion of the officers executing the warrant.

The affidavit was signed by a police officer who received information from a confidential police informant that a "quantity of nude photography, commonly referred to as 'child pornography' is being secreted at the address . . ." given. The photographs depicted the defendants who had possession of them, and a fifteen year old runaway minor. The affiant stated that a description of the runaway and a list of names of people with whom she was known to stay at times had been given to a detective working on that case by the minor's father. The defendants' names were among those pro-

vided. The affidavit related the visit of the informant with the defendants and the informant's description of the minor from the photographs as an approximately fifteen year old tall redhead, which matched the description the father had given to the detective. The affidavit ended with the statement that the "above mentioned informant has proven reliable in the past, assisting this department in numerous narcotic operations now pending prosecution."

■ An affidavit may be based on hearsay information and need not reflect the direct personal observation of the affiant, so long as the magistrate is informed of some of the underlying circumstances supporting the conclusions. *Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964). Accord *McCray v. Illinois,* 386 U.S. 300, 87 S.Ct. 1056, 18 L.Ed.2d 62 (1967); *Spinelli v. United States,* 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969); *State v. Treadway,* 28 Utah 2d 160, 499 P.2d 846 (1972); *State v. Fort,* Utah, 572 P.2d 1387 (1977); *State v. Romero,* Utah, 660 P.2d 715 (1983). The fact situation in the case under review is well within the requirements set under the two-pronged test of Aguilar-Spinelli: (1) the affiant set out in detail the bases of his knowledge, and (2) he presented underlying facts which showed the informant to have been reliable in the past, by adding to the general language of reliability the specific information that the assistance in narcotics operations had resulted in pending prosecutions. This is not analogous to the case where an affiant simply stated the title of a movie he never saw in its entirety and labeled it obscene without searching focus on the question of obscenity. Defendants' reliance on *Lee Art Theatre, Inc. v. Virginia,* 392 U.S. 636, 88 S.Ct. 2103, 20 L.Ed.2d 1313 (1968) is therefore misplaced.

■ This Court accords great deference to a magistrate's determination of probable cause. *State v. Romero, supra.* The standard for probable cause for the issuance of a search warrant is the probability, not a prima facie showing, of criminal activity. *State v. Fort, supra.* Defendants

contend that the term "child pornography and other evidence of sexual exploitation of a minor" is so vague and undefinable as to give total discretion in the execution of the search warrant. We do not read the term "child pornography" that broadly. Read in tandem with the specific language in the affidavit for the search and seizure warrant of "a quantity of nude photographs, commonly referred to as 'child pornography'", that generic term takes on the particularity required for proper guidelines in the execution of the search warrant. Nor does the exclusionary rule require that otherwise legally seized evidence be suppressed merely because it was obtained in the same search as evidence not germane to the charge and never introduced at trial. See *State v. Romero,* supra (admitting legal evidence though seized together with illegally obtained evidence). We conclude that the search warrant was properly executed in accordance with the statutory prescriptions found in U.C.A., 1953 (1980 amendment), § 77–23–1, et seq.

### III.

■ Finally, the defendants contend that the trial court committed reversible error when it admitted the inculpating evidence after defendants had asked for a hearing in compliance with § 76–10–1212(3), to determine whether probable cause existed to consider the material pornographic. In support of their claim, defendants direct our attention to *Heller v. New York,* 413 U.S. 483, 93 S.Ct. 2789, 37 L.Ed.2d 745 (1973) and *Marcus v. Property Search Warrant,* 367 U.S. 717, 81 S.Ct. 1708, 6 L.Ed.2d 1127 (1961). Both cases are distinguishable from the case under review as both dealt with proper safeguards against prior restraints in violation of First Amendment rights. In *Heller,* supra, a hearing similar to the one granted by Utah statute, was available to the defendant who did not demand it and was thus foreclosed from suppressing evidence where the warrant was properly issued. *Marcus,* supra, contemplated the seizure for destruction of allegedly pornographic material. In those cases the court held that "any system of prior restraints of expression comes to this

court bearing a heavy presumption against its constitutional validity." *Heller,* supra, 413 U.S. at 491, 93 S.Ct. at 2794, 37 L.Ed.2d at 754. No such prior restraint has been shown to exist here. The evidence was seized and introduced in support of the charge of sexual exploitation of a minor. It was not seized because it was pornographic, but because it involved the use of a minor for a visual recording of simulated sexual conduct. *New York v. Ferber,* supra, leaves no doubt that the states are given great deference in regulating sexual depiction of children.

> The prevention of sexual exploitation and abuse of children constitutes a government objective of surpassing importance. [Citing New York legislative findings.] We shall not second guess this legislative judgment ... The legislative judgment as well as the judgment found in the relevant literature, is that the use of children as subjects of pornographic materials is harmful to the physiological, emotional and mental health of the child. [Footnote omitted.] That judgment, we think easily passes muster under the First Amendment.

*Id.* —— U.S. at ——, ——, 102 S.Ct. at 3355, 73 L.Ed.2d at 1123, 1124.

### CONCLUSION

Utah is one of the vast majority of states that has passed legislation prohibiting the production of sexual depiction of children. Section 76–10–1206.5 prohibiting sexual exploitation of minors was not overly broad as applied to these defendants, was not so vague as not to apprise them of the illegality of their conduct, and did not invade their rights to privacy. The affidavit for the issuance of the search warrant described with particularity the nature of the misconduct as well as the reliability of the informant. What evidence was introduced at the trial was properly admitted and proved the charge beyond a reasonable doubt. Even were we to hold, which we do not, that it was error to deny a hearing on the pornographic nature of some of the materials seized, that error was harmless, as well

over 24 pictures admitted depicted the proscribed conduct.

The judgment is affirmed.

HALL, C.J., and STEWART, OAKS and DURHAM, JJ., concur.