## SNOW v. KEDDINGTON.

No. 7163. Decided May 1, 1948. (195 P. 2d 234.)

*Martin M. Larson* and *M. Spencer Miner,* both of Salt Lake City, for plaintiff.

*Edward M. Morrissey,* County Atty., of Salt Lake City, for defendant.

LATIMER, Justice.

This is an original mandamus proceeding in this court to require defendant, Alvin Keddington, County Clerk of

Salt Lake County, State of Utah, to file petitioner's declaration of candidacy for the office of county attorney of Salt Lake County on the Democratic ticket. The dispute in this action revolves around the effective date of an amendment to our constitution.

Section 10 of Article VIII of the constitution of the State of Utah prior to 1947 was as follows:

"A County Attorney shall be elected by the qualified voters of each county who shall hold his office for a term of two years. The powers and duties of County Attorneys, and such other attorneys for the State as the Legislature may provide, shall be prescribed by law. In all cases where the attorney for any county, or for the State, fails or refuses to attend and prosecute according to law, the courts shall have power to appoint an attorney pro tempore."

On February 16, 1945, joint resolution, H. J. R. No. 4, Laws of Utah 1945, p. 321, was passed by two-thirds of all the members elected to each house of the legislature. This joint resolution insofar as material to this litigation is as follows:

"Be it resolved: Section 1. That it is proposed to amend section 10, article VIII, of the constitution of the state of Utah to read:

"Section 10. A county attorney shall be elected by the qualified voters of each county who shall hold his office for a term of four years. The powers and duties of county attorneys, and such other attorneys for the state as the legislature may provide, shall be prescribed by law. In all cases where the attorney for any county, or for the state, fails or refuses to attend and prosecute according to law, the court shall have power to appoint an attorney pro tempore.

"Section 2. The secretary of state is directed to submit this proposed amendment to the electors of the state at the next general election in the manner provided by law.

"Section 3. If adopted by the electors of the state this amendment shall take effect the first day of January, 1947."

The amendment proposed by this resolution was submitted to the voters of this state at the general election in November, 1946. It was passed by a majority vote of the people, and by its express terms became an effective part of the constitution on January 1, 1947.

Within the time prescribed by the election laws of this state and during the year 1946, Edward M. Morrissey, present county attorney of Salt Lake County, State of Utah, filed a declaration of candidacy for nomination as county attorney. Similar declarations of candidacy by those seeking similar offices were filed by individuals in other counties of this state. In the general election of November, 1946, the voters elected the present incumbents in office, and at the same time, ratified and approved the above-mentioned amendment to the constitution. All county attorneys elected at the general election in 1946 took office January 6, 1947.

On March 13, 1947, the legislature of this state passed an act amending Section 19-13-6, U. C. A. 1943. The section prior to the amendment read as follows:

"All elective county and precinct officers, except as otherwise provided in this title, shall be elected at the general election held in November, 1934 and every four years thereafter. *The county Attorney shall be elected biennially at the general election provided for by law.* County commissioners shall be elected at the times, in the manner and for the terms in this title provided. All elective officers shall hold office for the term for which elected, beginning at noon on the first Monday in January following their election and until their respective successors are elected or appointed and qualified." (Italics ours.)

The act of 1947, c. 27, changed the provisions with respect to the county attorney, and the section in that regard now reads as follows:

"All elective County and Precinct officers, except as otherwise provided in this title, shall be elected at the general election held in November, 1934, and every four years thereafter. *The County Attorney shall be elected at the general election held in November, 1950, and every four years thereafter. Incumbent County Attorneys shall hold office until successors are elected and qualified at the general election in November, 1950.*" (Italics ours.)

When the proposed constitutional amendment was submitted to the electorate in November of 1946, the ballot posed the amendment in the form of a question. The proposed amendment being referred to as constitutional amend-

ment No. 5. The manner and method of submitting this amendment was by printing on the ballot the following:

"Constitutional Amendment No. 5

"A Joint Resolution Proposing to Amend Section 10, Article VIII of the Constitution of the State of Utah, Relating to the Election and Duties of County Attorneys and Fixing the Term Thereof.

"Yes ☐                    No ☐"

On March 3, 1948, being within the time prescribed by law, the plaintiff herein tendered to the county clerk of Salt Lake County his declaration of candidacy for office of county attorney together with such monies and other documents as are required by law. The defendant county clerk of Salt Lake County refused the tender for the reason that he had been advised the constitutional amendment and section 19-13-6, U. C. A. 1943, applied to officers elected in 1946, and the office of county attorney was not an elective office to be filed at the general election in November, 1948. At the time the present county attorneys filed their declarations of candidacy in the year 1946, the act had not been amended, and so the declaration at that time was, of necessity, limited to the two-year period. The defendant in this action alleges that at the time of filing his declaration of candidacy in 1946, Edward M. Morrissey, the present county attorney of Salt Lake County, tendered a declaration of candidacy and filing fees for the four-year period, but that the tender was refused for the reason that the two-year limitation was in force and effect at that time.

While the sole question for our determination is whether or not county attorneys elected in 1946 are eligible to serve a four-year term, this question is being subdivided into two respective parts, namely:

First: What date did the constitutional amendment take effect:

Second: If the constitutional amendment did not become effective until January 1, 1947, is the amendment to Section 19-13-6, U. C. A. 1943 constitutional?

First. Defendant, with considerable force, insists that the constitutional amendment became effective on the date of the general election, November 5, 1946. Undoubtedly the general rule is that a constitutional amendment becomes effective on the date it is passed by a majority vote of the people. However, this rule is not applicable if the amendment that is submitted to the voters includes a provision that the same shall take effect on a later designated date.

In the case of *State ex rel. Scott* v. *Dirckx*, 211 Mo. 568, 111 S. W. 1, 3, the Supreme Court of Missouri, in a suit involving the right of a sheriff to succeed himself under an amendment to the constitution, held that a constitutional provision need not go into actual operation until a later date even though it may have a potential existence on the date of passage. In support of this principle, we cite the following language taken from that opinion:

"* * * While the amendment became a part of the Constitution of this state from the time of the canvass of the vote thereon by the Secretary of State in 1906, by its terms it was not to have actual operation and practical effect until the election in 1908, the first time when an election for sheriff was to be held under its provisions. *That a statute or constitutional provision may have a potential existence, but which will not go into actual operation until a future time, is familiar law.*" (Italics our.)

In the case of *DeMaggio* v. *Attorney General et al.*, 300 Mich. 251, 1 N. W. 2d 530, 531, the Supreme Court of Michigan, in a suit declaring certain rights under an amendment to the state constitution, held that postponing the effective date of an amendment was a permissible procedure. The following language is taken from the opinion:

"It seems clear that the purpose of the 30-day clause, Mich. Const. 1908, art. 17, § 2, is to enable the public to become acquainted with the provisions of an amendment after it has been approved. There is nothing in the Constitution which prohibits the postponement of the effective date of the operation of the amendment. Article 5 of the Constitution of the United States provides that amendments shall become 'valid to all Intents and Purposes, as Part of this Constitution, when ratified by the Legislatures of three fourths of the several

States,' yet the 18th amendment to the Federal Constitution prohibited the manufacture or sale of intoxicating liquors 'after one year from the ratification of this article.' In our opinion the electors in voting upon the civil service amendment intended that its effective date should be January 1, 1941, and there being nothing in our Constitution prohibiting such postponement, we hold that the will of the electors, so expressed, must govern."

The United States Supreme Court in the case of *Dillon* v. *Gloss*, 256 U. S. 368, 41 S. Ct. 510, 65 L. Ed. 994, passed on the effective date of the 18th Amendment to the United States Constitution. The ratification was consummated on January 16, 1919, but according to the provisions of the amendment, the effective date was to be one year after the amendment had been ratified by three-fourths of the states. The Court held that the provisions of the amendment were controlling and the effective date could be postponed if such delayed operation was submitted to the people.

Defendant in effect concedes the principle announced by these and other authorities, but insists they are not controlling, for the reason that section 3 of the joint resolution was not submitted to the voters in accordance with the requirements of our statutes. Section 1, Article XXIII of the constitution of this state provides as follows:

"Any amendment or amendments to this Constitution may be proposed in either house of the Legislature, and if two-thirds of all the members elected to each of the two houses, shall vote in favor thereof, such proposed amendment or amendments shall be entered on their respective journals with the yeas and nays taken thereon; *and the Legislature shall cause the same to be published in at least one newspaper in every county of the State, where a newspaper is published, for two months immediately preceding the next general election, at which time the said amendment or amendments shall be submitted to the electors of the State, for their approval or rejection,* and if a majority of the electors voting thereon shall approve the same, such amendment or amendments shall become part of this Constitution. If two or more amendments are proposed, they shall be so submitted as to enable the electors to vote on each of them separately." (Italics ours.)

This section of the constitution is supplemented by two sections of the U. C. A. 1943. The first of these, Section 25-3-54 in part provides as follows:

"* * * *and the county clerk of each county shall cause to be printed both the number and the title of the proposition or question to be submitted upon the ballot to be used on election day,* and on the sample ballots, and publish the same as provided for by law." (Italics ours.)

The other section is 25-6-4, and the relevant provisions of this section are as follows:

"Whenever the approval of a constitutional amendment is submitted to the vote of the people, *the county clerk shall cause to be printed on cards in large clear type the original provision of the constitution, together with the proposed amendment thereto in different type, enclosed in brackets in such manner that the nature of such amendment will be clearly indicated.* * * * The election judges shall post not less than one of such cards in each place or compartment provided for the preparation of ballots, and not less than three thereof in and about the polling place on the day of election." (Italics ours.)

Under the constitutional provision, Section 1, Article XXIII, the legislature is required to have the amendment published in at least one newspaper in every county of the state, where a newspaper is published, for two months immediately preceding the next general election. This duty was carried out by the secretary of state and the amendment was published as required. The defect in the publication suggested by the defendant is that the county clerk did not publish the effective date of the act on the cards as required by the statutes.

Section 25-6-4, U. C. A. 1943, provides that county clerks shall cause to be posted on the cards in a large clear type the original provision, together with the proposed amendment thereto in different type, enclosed in brackets in such manner that the nature of such amendment will be clearly indicated. In this particular amendment the change suggested by the resolution was limited to deleting the word "two" and substituting the word "four."

It should be remembered that the amendment is not printed in full on the ballot. It is merely designated thereon by number and title, as is previously indicated in this opinion. Such being the case, the notice of importance to the voter is the publication in the newspapers prior to the general election. This is the publication that permits the voter time to consider the merits or demerits of the proposed change. At most, the card in the voting booth could only be a helpful reminder of the general sense of the proposed change. Failure of the county clerk to furnish cards complete in all details might be a violation of the statute, but it would not prevent passage of the proposed joint resolution.

Under our constitutional requirements, notice must be carried in the newspapers, and if publication was of the complete proposed joint resolution including the provision for a delayed effective date, then the mere fact that this date was not also published on the cards does not ■ require a holding that the proposition to postpone has not been submitted to the voters. All voters throughout the state are entitled to notice, and the fact that one county clerk may or may not have included all of the necessary information on the cards is not fatal to the passage of the complete resolution. If our constitution or statutes made no provision for general publication, and provided that it was necessary that the proposed amendment and its effective date be set out in full on the ballot, then the failure to include the proposition of a delayed date might constitute a failure to submit that portion of the proposed amendment to the people. However, the probabilities and possibilities of the voter being fully informed of the context of an amendment are reasonably assured. if the publication is in the newspapers. Accordingly, the method of notice prescribed by the constitution is one reasonably calculated to give notice to the voters, and this method was here complied with. This is sufficient to sustain a finding that the proposed amendment including its delayed effective date was submitted to the voters for approval or disapproval. The

voters having approved an effective date of January 1, 1947, the amendment could not take effect before that time.

Second. If the constitutional amendment became effective January 1, 1947, is Section 19-13-6, Laws of Utah 1947, constitutional? The general rule is that the term for which an officer is elected shall be fixed before the election. This is founded on the principle that the right of selecting officers for fixed terms belongs to the people, and the legislature is not permitted to defeat this right by changing the length of term of office after an officer has been elected.

The facts of this case, however, do not bring it within the general rule. In this particular instance, the voters voted on the officer and the extended term at the same time. Neither party contends that the voter can be denied the right to elect constitutional officers and to set the term of office. What does separate the parties, is that plaintiff contends for, and defendant denies, the proposition that the provisions of the constitution in effect at the time the voter cast his ballot determine the length of the term of office and that an amendment to the constitution lengthening the term of office can only effect subsequent elections.

It is clear from the authorities generally, that public offices may be created, abolished, or the time shortened or lengthened by constitutional amendment at any time the people choose to express their will in the manner provided by the constitution. In this case, the voters elected to lengthen the term of office of county attorney to four years. The apparent reason for this change was to make this term of office consistent with, and of the same duration as the terms of other county officers. The voters having lengthened the term to four years, and having made the effective date of the act subsequent to the election, but prior to the time the officers were inducted into office, it is difficult to determine with exactness the intent of the voter. Whether or not the benefits of the amendment should apply to those officers who were elected in 1946, but who were not sworn into office until after the effective date of the act, or

whether or not it was intended the four year tenure of office should apply to officers elected after the general election of 1946 is not expressly provided for by the language of the amendment. The courts of at least two jurisdictions have reached opposite results under somewhat similar amendments.

The Supreme Court of New York in the case of *Wingate* v. *Flynn*, 139 Misc. 779, 249 N. Y. S. 351, 356, affirmed 233 App. Div. 785, 250 N. Y. S. 917; 256 N. Y. 690, 177 N. E. 195, held that a surrogate was elected for only six years, regardless of the passage of an amendment to the constitution at the same election extending the term to fourteen years. It is important to note that the constitutional amendment in that case, while it took effect on the 1st day of January after its passage, contained the following language:
"where they shall hereafter be elected for a term of fourteen years."

Const. N. Y. art. 6, § 13. The following quotation taken from the decision indicates the importance of that phrase:

"On the day of plaintiff's election in the instant case, the electors of the county of Kings were authorized to choose a surrogate for the term of six years. This term began on January 1, 1926. On January 1, 1926, these electors were for the first time authorized to choose a surrogate for the term of fourteen years. They had no such authority before that date. The amendment specifically states that the surrogate of the county of Kings 'shall hereafter be elected for' a term of fourteen years. This amendment went into effect on January 1, 1926, and therefore speaks only of elections held on and after that date. The wording is positive and definite, and is not susceptible of more than one interpretation."

The Supreme Court of Montana in the case of *State* v. *Duncan*, 108 Mont. 141, 88 P. 2d 73, held that on passage of an amendment to the constitution which fixed the term of office of county officers at four years instead of two, the four-year term immediately became effective, and officers elected at the same election at which the amendment was approved were elected for the lengthened term. The principle relied on by that court in that case was that the ex-

tension of the term of office and election of the officers were coincidental, and that upon passage of the amendment, there was but one four-year term of office, and the officers voted on in the election were elected for the extended term.

Neither of the foregoing cases are on all fours with the one with which we are concerned. The *Wingate* v. *Flynn* case, supra, is distinguishable because of the difference in the phraseology of the constitutional amendments and the *State* v. *Duncan* case, supra, because of the fact that our amendment by its terms did not become effective coincidentally with the election of the officers.

While a constitutional amendment is subject to the same construction as a statute and should be given prospective effect rather than retroactive effect, we believe this constitutional amendment can be given prospective effect and still not prohibit the legislature from amending Section 19-13-6, U. C. A. 1943. Article IV, Section 9 of the state constitution provides that the terms of all officers elected at any general election shall commence on the first Monday in January next following the date of their election. With this article in effect, the amendment as submitted and adopted increases the term of office of county attorneys to four years effective as of the first day of January, 1947. This constitutional amendment changes only the term of office, and the increased four-year term was placed in effect prior to the time the term began. As to those officers who took office after the first of the year, the amendment, as it affected the term of office, was prospective. For the legislature, therefore, to enact legislation starting the four-year term of office as of the effective date of the constitutional amendment would be merely carrying out the terms of the amendment and the statute likewise would be prospective.

Every presumption is in favor of the constitutionality of the statute. Every reasonable doubt must be resolved in its favor and not against it. Our duty is to adjudge the statute valid unless the violation of the constitution is clear, complete and unmistakable. Accordingly,

if we accord the statute the presumption of constitutionality and resolve any doubts in its favor, we are required to make reasonable distinctions before finding it offends against constitutional requirements. The constitutional amendment provides that county attorneys shall be elected for a term of four years. The change from the original to the amended provision applied only to the term of office, and in effect, provided that every four years instead of two, the voters should be afforded an opportunity to vote on a candidate for the office of county attorney. The people, by passing the amendment, removed the two-year limitation on the term of office and extended the term to four years. The removal of this limitation, before the commencement of the term and without the amendment prescribing the beginning date of the new term, permitted the legislature some latitude in prescribing, within the four-year period, the starting date of the term.

The wording of our act at the time of the election was,

"A County Attorney shall be elected by the qualified voters of each county who shall hold his office for a term of two years."

Accordingly, when the voter cast his ballot, he was voting for an officer who could hold office for only two years, but whose term of office would not commence until such time as the four-year term had come into existence. There could not, of course, be a two-year term in existence at the same time as a four-year term. The constitutional enactment having removed the two year bar before the term of office began, the 1947 legislature was faced with the problem of fixing the time when the extended term would commence. The legislature would have no authority to legislate on the subject if the voters clearly indicated they intended to make the extended term available to those officers being voted for at the same time, or to deny the benefits to them and permit only subsequently elected officers to benefit from the change. However, if the amendment did not prohibit the extended term from applying to those officers elected in 1946, then the legislature could en-

act Section 19-13-6, Laws of Utah, 1947, as this section would be within the framework of the constitution as so amended.

We are of the opinion that the amendment does not express or imply an intent in the part of the voter to prohibit its application to those officers elected in 1946. Therefore unless the legislative enactment lengthening the term of office was merely a guise to grant an additional term to the present officeholders, then the statute can be upheld.

Article XI, Section 4 of the constitution of the state of Utah, from the date of the adoption of the constitution, has provided that the legislature shall establish a system of county government throughout the state. The provision delegated to the legislature power to set up the kind and form of county government best suited to our purposes. Incidental to this grant is the power to harmonize elections of and terms of office for county officers for the purpose of uniformity or harmony. The limitations on this delegated power are governed only by such constitutional restrictions as may be provided for or inferred from our constitution.

Counsel for plaintiff in effect concede the foregoing principle, but direct our attention to the fact that in no cited cases has this power been exercised so as to permit an officeholder to continue in office beyond the next general election. If we were to so limit the authority of the legislature in this case, then the commencement and ending of the term of the county attorney, even though within the term provided by the amendment, could never be made coincidental with the terms of other county officers except by constitutional amendment. While to maintain continuity in government two county commissioners are elected every two years, a short and long term office arrangement, all other county officers are elected on the off-presidential election years. If section 19-13-6, Laws of Utah 1947, is held to be unconstitutional, because of increasing a term of office, then the county attorney is the only regular four

year county officer who must be elected in a presidential general election.

The legislature has the power to secure uniformity in official terms and to harmonize the terms of office of county officers. The fact that by changing the commencement date of a term, one officer obtains an additional period in which to serve does not render the plan ■ illegal. If the act is fairly intended to co-ordinate and unify the various county offices into an operating political body with continuity, and is not intended solely to grant incumbent officers an extra term, then it cannot be rejected because it may extend a term of one office. Otherwise, unification would be impossible. The vice of extending a term is that it denies the people a chance to select the officer at the time he should be voted for, but in this case, if there has been a postponement of any election, the delay has been brought about by the people themselves. Certainly the legislature cannot deny the people the right to vote as often as they demand, but if the voters prescribe an election only every four years and further prescribe the four-year period is to take effect before the commencement of the next term of office, it is difficult to appreciate how they have been denied a right to choose who an officer will be and for how long he will serve. Had the legislature considered it advisable to vote on candidates for the office of county attorney in the year 1948, the joint resolution could have so provided. It appears slightly inconsistent for the people at the same election to vote for candidates, vote to extend a term of office from two to four years, prescribe the extension shall become effective before the officers who are being voted for take office, and at the same time intend to again vote on candidates for the same office before the increased period has expired.

The Supreme Court of North Dakota in the case of *O'Laughlin* v. *Carlson*, 30 N. D. 213, 152 N. W. 675, 678, considered the right of the legislature to pass general laws for the purpose of obtaining uniformity in official terms. We quote from the opinion of that court:

"* * * The mere fact that, as an incidental result, the terms of the then incumbents were extended, would not of itself show any intention on the part of the Legislature to deprive the office of county commissioner of its elective character or evince any intention on the part of the Legislature to exercise the appointive power. And it is generally held that the Legislature has the power to pass general laws for the purpose of obtaining uniformity in official terms or a proper order of succession, and the mere fact that, as an incident thereto, the incumbents of such offices are permitted to hold over for a limited time does not invalidate such legislative enactment. *Jordan* v. *Bailey*, 37 Minn. 174, 33 N. W. 778; *Christy* v. *B. S. Sacramento Co.*, 39 Cal. 3; *State* v. *Board of Com'rs.*, 34 Mont. 426, 87 P. 450; *Spencer* v. *Knight*, 177 Ind. 564, 98 N. E. 342; *Graham* v. *Roberts*, 200 Mass. 152, 85 N. E. 1009; *State* v. *Andrews*, 64 Kan. 474, 67 P. [870], 871. See, also, 29 Cyc. 1397."

That for many years the legislature of this state has been attempting to harmonize the terms of the various county officers is established by the history of the legislation dealing with this subject. Session laws of Utah 1921, amending Section 1460, compiled Laws of Utah, 1917, in regard to uniformity of county officers taking office provided as follows:

"The elective county and precinct officers, except otherwise provided for in this title, and except justices of the peace and constables in cities having a population of more than fifteen thousand (15,000) and less than forty thousand (40,000) inhabitants, shall be elected at a general election to be held in November, 1922, and every four years thereafter, unless otherwise provided, and shall take office at twelve o'clock meridian, on the first Monday in January next following the date of their election. Commissioners and county attorneys shall be elected as provided by law. All officers elected under the provisions of this title shall hold office until their successors are elected or appointed and qualified."

In Revised Statutes of Utah, 1933, this act was amended so as to provide for the election of these officers in the year 1934. This provision was as follows:

"All elective county and precinct officers, except as otherwise provided in this title, shall be elected at the general election held in November, 1934 and every four years thereafter. The county attorney shall be elected biennially at the general election provided for

by law. County commissioners shall be elected at the times, in the manner and for the terms in this title provided. All elective officers shall hold office for the term for which elected, beginning at noon on the first Monday in January following their election and until their respective successors are elected or appointed and qualified."

This same provision was carried over into the U. C. A. 1943, and remained the law of this state until the amendment was passed in 1947. It will thus be observed that from 1921 until 1947 all county officers with the exception of the two county commissioners and the two-year county attorney were elected at the general election in off-presidential years. The reason for not sooner including county attorneys in the plan was because of the constitutional prohibition. It would, therefore, seem consistent with uniformity of county government, and to prevent a divided political administration, to have the principal county officers elected at the same time. This would assure political and economic cooperation and be more desirable than a split political body. While it may be desirable to retain the present county commissioner plan so as to have continuity in the commission, there is every good reason in favor of having the county attorney take office at the same time as other county officers.

The authorities generally hold that an act which extends the term of office so as to defeat the voter's right to elect the officer at the times provided in the constitution is unconstitutional. It can hardly be contended that Section 19-13-6, Laws of Utah 1947, has this effect. If the people are denied an opportunity to vote for county attorneys in the year 1948, it is because they, the people, have provided for the election of a county attorney only every four years and have decreed that the effective date of the change was to be prior to the time the present incumbents took office. This is not the case of the legislature changing the term of office to fit the man, rather this is a case, where the people, by a constitutional amendment, have changed the term and have permitted the legislature to apply the change

to the man whose term had not commenced. The constitutional amendment did not foreclose the legislature from dealing with the subject insofar as it was necessary to coordinate the working of the various county offices, and insofar as the legislature operated within the framework of the constitution. We believe the legislature has acted within the authority conferred by the amendment.

The alternative writ of mandamus heretofore issued is recalled and a preemptory writ denied. No costs allowed.

McDONOUGH, C. J., concurs.

PRATT, Justice (concurring in result).

I concur in the result. I would arrive at that result by the following path of reasoning:

The *sentence* in Section 10 of Article VIII of our Constitution which is amended reads as follows:

"A County Attorney shall be elected by the qualified voters of each county who shall hold his office for a term of *two* years." (Italics added.)

The *two* is changed to *four* by amendment. It was provided that if this amendment was adopted it should take effect the first day of January, 1947. The question is: What becomes effective on January 1, 1947—just part of the sentence (the amended part, as indicated by the prevailing opinion) or the whole sentence as amended? I say that it is the *entire sentence* as amended which becomes effective on January 1, 1947. It is the same as if the people said: From and after January 1, 1947 all *elections* for county attorney shall be for a *four year term*. As the 1946 election is not after January 1, 1947, the amendment would have no application to that election. The next election after January 1, 1947 would be that of 1948, which, logically would be the first election under the amendment. There are, however, other facts that must be considered.

Section 10, Article VIII of our Constitution does not fix a date for the first election of county attorneys, such for

instance, as is provided for the election of congressmen (Sec. 1, art. IX) (see generally the provision for judges, members of the legislature, etc., Sec. I, art. IX; Sec. 5, art. VIII; Secs. 3 and 4, art. VI; Secs. 1 and 2, art. VII; and Sec. 9, art. IV). Absent such a starting date, the legislature has power to syncronize the election of county attorney with those of other elective county officials, where an application of the terms of the amendment would create an inharmonious result, as discussed in the prevailing opinion. The legislative enactment under discussion which fixed 1950 as the first election year for county attorney for the extended term was an enactment in the interest of harmonizing elections of county officials and proper under the circumstances.

I think the weakness and uncertainty of this whole matter lies in a failure to provide in the body of the amendment itself, a definite commencement date for elections for the extended term—for instance to include as part of the amendment itself such words as this: Commencing with the election of (naming year) county attorneys shall be elected by the qualified voters of each county for a term of four years. Without such definiteness, a maze of uncertainty is created, necessitating court action, such as the present, for clarification.

WADE, Justice.

I concur with Mr. Justice Latimer's opinion except that I think the intention of the voters in adopting the 1946 amendment was not in doubt. In that respect I agree with Mr. Justice Pratt although in reaching this conclusion I do not stress the sentence structure of the amendment as much as he does. I think the voter's intention as expressed by this amendment was that the amendment itself should not increase the term of office of the county attorneys elected in the 1946 election from two to four years. But since the election of such officers was complete before the amendment took effect in order to so enlarge the term it would require an express provision to that effect. The

amendment might have expressly provided that such term would be so enlarged or that it would not be so enlarged. Had it done either one the legislature would, in the face of such a constitutional provision, been powerless to have changed it. But here the amendment did not expressly provide that the legislature should not enlarge the term of office of the county attorneys who were elected in the 1946 election to a four year term. It made no provision on that question whatsoever. Again had the amendment been intended to have that effect it should have expressly so provided.

Prior to the effective date of the amendment the constitution required that the county attorney be elected for a term of two years. This provision as it then stood had the effect of prohibiting the legislature from increasing the term from two to four years. But after the effective date of the amendment there was no constitutional provision which would prevent the legislature from increasing this term. In other words, this amendment in effect said the term of office of all county attorneys elected after the effective date of this amendment shall be for four years, but nothing herein shall prevent the legislature from increasing the term of office of the county attorneys elected in the 1946 election from a term of two to four years.

WOLFE, Justice (concurring in the result).

Section 10, Article VIII of our Constitution, as far as material here, read prior to the election of November, 1946, as follows:

"A County Attorney shall be elected by the qualified voters of each county who shall hold his office for a term of two years."

This is exactly equivalent in meaning to saying:

"A County Attorney shall be elected by the qualified voters of each county. He shall hold office for a term of two years."

The amendment proposed by the Legislature and passed by the people did not affect the method of selecting the

County Attorney. That still remained by the process of election. It simply operated on the term increasing it from two to four years.

While the amendment became a part of the Constitution when a majority of the electors voted for it, the date when it became operative was January 1, 1947. Certainly this was permissible and such operative date was a part of the amendment voted on even though there was not printed on the cards that part of the proposed amendment. The constitutional steps required to place the complete proposed amendment on the ballot were complied with, and that is all that is necessary.

The amendment was self-executing and prospective. It operated on the term of office changing it from two to four years. It applied to all terms of office of county attorneys which came into being after January 1, 1947. This is the plain common sense reason for making the amendment operative January 1st. The first term which came into being after January 1, 1947, was the one beginning January 6, 1947. The Constitutional amendment therefore in effect said that the individuals elected respectively for that term and the terms thereafter should serve for four years.

Mr. Morrissey, who was elected to fill the term which came into being after January 1, 1947, may occupy the office until the first Monday in January, 1951. A term may be shortened, lengthened or abolished by the Constitution even though it cuts off the office or part of the term of an incumbent.

Under my theory of the purpose and efficacy of the amendment to Section 10, Article VIII of our Constitution now under consideration, terms of county attorneys beginning after January 1, 1947, were made four years and the term beginning January 6, 1947, to which Mr. Morrissey was elected will last until noon of the First Monday of January, 1951, without aid of any statute. The amendment to the statute appears to me to implement the constitutional amendment as I interpret it. The four year term occupied by Morrissey will expire at noon of the first Monday in

January, 1951. The amendment to Section 19-13-6, U. C. A. 1943, provides for an election of a new county attorney who will succeed Morrissey as incumbent on the first Monday in January, 1951, in November, 1950. Had the Legislature failed to amend the statute the result would be the same. The constitutional amendment, without more, accomplished the substituting of a four year term which commenced January 6, 1947, for the two year term. Failure on the part of the legislature to amend the statute could not defeat the constitutional amendment. In the case at bar the statutory amendment actually implemented and fitted in with the constitutional amendment.

What I have said in this opinion seems to be in accord with one basis for the main opinion. But what I conceive to be a simple and natural solution of the problem at hand seems to have become somewhat complicated. It is for this reason that I prefer to state the reasons for my concurrence in the result.