**SALT LAKE CITY, Plaintiff
and Respondent,**

v.

**Will SAVAGE, Defendant and Appellant.**

**No. 14000.**

Supreme Court of Utah.

Oct. 21, 1975.

Stephen R. McCaughey, Salt Lake Legal Defender Assn., Salt Lake City, for defendant and appellant.

Roger F. Cutler, Salt Lake City Atty., Gregory R. Hawkins, Asst. Salt Lake City Atty., Salt Lake City, for plaintiff and respondent.

ELLETT, Justice:

The appellant was convicted in the city court of the crime of loitering and on appeal to the district court was again convicted. The only question which he can and does bring before us is the validity of the ordinance under which he was charged.

The ordinance in question, so far as material, reads thus:

A person is guilty of loitering when he:

\*     \*     \*     \*     \*     \*

(5) Loiters, remains or wanders in or about a building, lot, street, sidewalk, or any other public or private place wtihout apparent reason and under circumstances which justify suspicion that he may be engaged in or about to engage in a crime, and

    (a) upon inquiry by a peace officer, refuses to identify himself by name and address; or

    (b) after having given his name and address by inquiry of a police officer refuses or fails to give a reasonably credible account of his conduct and purpose.

While the judgment of the districit court is final as to all matters appealed from the lower court except the constitutionality of the ordinance, still a few of the undisputed facts of this case are of interest in showing the necessity of the ordinance as a police measure for the protection of society.

The appellant was seen to drive his automobile in and out of the parking area of the Tri-Arc Travelodge several times between 3:00 a.m. and 3:30 a.m. Within the past week 28 rooms in the motel had been broken into by means of a pair of channel lock pliers, and besides personal property belonging to guests, ten television sets had been stolen. In order to catch the burglar, four police officers were on duty at the time in question. They had observed the appellant and the movements of his car. A short time after they observed appellant leave the parking area for the third time, they observed his automobile backed into a parking stall almost in front of a rear door of the motel. A seearch of the building revealed that the appellant was prowling the hallway on the second floor. As one of the officers passed him, he bought a coke from a vending machine in the hallway and then proceeded to his automobile and got inside, where he was arrested pursuant to the ordinance. He was wearing gloves, and a pair of channel lock pliers was on the floor of his car. He was also wearing a black wig, although his hair was gray. As soon as the wig was removed, the officers recognized him from contacts over the past ten years.

██ While the appellant complains that the ordinance permits arrests and harassment without reasonable cause, it is obvious that he cannot claim that there was no reasonable cause to believe that he was about to commit a crime.

The principal claim made against the validity of the ordinance is that it is too vague to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by the ordinance and that it places unfettered discretion in the hands of the police and the prosecutor.

We are unable to see where any unusual authority is given to police officers or to prosecuting attorneys by this ordinance. In every criminal case a determination must be made as to whether a crime has been committed and whether the evidence is suf-

ficient to obtain a conviction. If those charged with the duty of enforcing the law are not doing their duty, a grand jury can be called. If they are overly zealous in making an arrest of a defendant, the trial jury will so say, and the defendant will then have his civil remedies available to him. These matters apply alike to this ordinance as well as to any other crime.

■ An attack is made upon the ordinance because the loitering must be under "circumstances which justify suspicion that he may be engaged in or about to engage in a crime." It is claimed that the language does not state whose suspicion is to be justified and it is therefore ambiguous.

It seems clear that it is the officer who must, as a reasonable person, first entertain the suspicion, and then it is for the jury in case of trial to determine if that suspicion was well founded. The circumstances of each case must be considered in deciding whether the conduct of an accused did or did not justify a suspicion that he was engaged in or about to engage in a crime. Parts (a) and (b) of the ordinance are as clear as can be. They afford an accused an opportunity to show lawful purpose and justification for his seemingly suspicious conduct. He need not avail himself of these rights if he does not care to do so. He may wait and tell the jury at trial if he prefers.

■ In reviewing an ordinance or statute to ascertain its constitutionality, certain rules of construction must be applied:

(a) A legislative enactment is presumed to be valid and in conformity with the constitution.[1]

(b) It should not be held to be invalid unless it is shown beyond a reasonable doubt to be incompatible with some particular constitutional provision.[2]

(c) The burden of showing invalidity of an ordinance or statute is upon the one who makes the challenge.[3]

In the case of *State v. Packard*[4] it was said:

It is recognized that statutes should not be declared unconstitutional if there is any reasonable basis upon which they may be sustained as falling within the constitutional framework [citations omitted], and that a statute will not be held void for uncertainty if any sort of sensible, practical effect may be given it. [Citations omitted.]

The Supreme Court of the United States in *Roth v. U.S.*[5] said:

. . . This Court, however, has consistently held that lack of precision is not itself offensive to the requirements of due process. " . . . [T]he Constitution does not require impossible standards"; all that is required is that the language "conveys sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices . . ." *United States v. Petrillo,* 332 U.S. 1, 7–8, 67 S.Ct. 1538, 91 L.Ed. 1877.

The case of *Sunset Amusement Co. v. Board of Police Commissioners of the City of Los Angeles*[6] is in point:

. . . It should be kept in mind that there are an infinite variety of activities or conduct which could result in potential or actual danger to the "peace, health, safety, convenience, good morals, and general welfare" of the public. A municipality cannot reasonably be expected to isolate and specify those precise activities or conduct which are intended to be pro-

1. *Trade Commission v. Skaggs Drug Centers, Inc.,* 21 Utah 2d 431, 446 P.2d 958 (1968); *Snow v. Keddington,* 113 Utah 325, 195 P.2d 234 (1948).

2. Cases cited note 1 supra.

3. *Trade Commission v. Skaggs Drug Centers, Inc.,* supra note 1.

4. 122 Utah 369, 373, 250 P.2d 561, 563 (1952).

5. 354 U.S. 476, 491, 77 S.Ct. 1304, 1312, 1 L.Ed.2d 1498 (1956).

6. 7 Cal.3d 64, 101 Cal.Rptr. 768, 773, 496 P.2d 840, 845 (1972).

**1038**

scribed. As stated in *Daniel,* quoting from an earlier case, "To make a statute sufficiently certain to comply with constitutional requirements [of due process of law] it is not necessary that it furnishes detailed plans and specifications of the acts or conduct prohibited." . . .

■ The ordinance in question gives a sufficient notice to any would-be miscreant that his conduct, under the existing circumstances, would cause a reasonable person to suspect criminality was in the offing.

This ordinance is not like the ordinary loitering ordinance which makes it a crime to loiter about without any visible means of support. That type of statute has been held to be in conflict with constitutional provisions. This one is entirely different. It enables officers to act in a manner to prevent a crime when it appears with reasonable certainty that the commission of a crime is imminent. The would-be burglar knows that he is likely to arouse suspicions if he is at the door of a warehouse at midnight with a crowbar in his hand. Likewise, the would-be murderer knows that when he is seen aiming a pistol at another person, he not only might be but should be arrested.

It might be that a set of innocent circumstances could be conjured up which would give a suspicion to a reasonable man that a crime had been or was about to be committed. Such a situation does not readily come to mind, but if it does, then an immediate out is provided for by subsections (a) and (b) of the ordinance.

We think the crime of loitering as defined in the ordinance is clearly and unambiguously set forth and defined and that the claim of invalidity is not well taken.

Other related claims are set out, but they are without merit.

The judgment and sentence made pursuant thereto are hereby affirmed. No costs are awarded.

HENRIOD, C. J., and CROCKETT, J., concur.

TUCKETT, Justice (concurring in result):

I concur in the result in view of the particular facts in this case. However, if the ordinance were so construed as to mean that the lawfulness of a person's action depends on the opinion of a policeman, it would be unconstitutional.

MAUGHAN, J., concurs in the concurring opinion of TUCKETT, J.