PROVO CITY CORPORATION,
Plaintiff and Appellee,

v.

Rulon Duane WILLDEN, Defendant
and Appellant.

No. 20983.

Supreme Court of Utah.

Jan. 23, 1989.

W. Andrew McCullough, Orem, for defendant and appellant.

James Brady, Vernon F. (Rick) Romney, Provo, for plaintiff and appellee.

ZIMMERMAN, Justice:

Defendant Rulon Duane Willden appeals his conviction of soliciting sexual conduct in violation of section 12.45.010 of the Provo City ordinances. He claims that section 12.45.010 is unconstitutionally overbroad. We agree that the ordinance violates the free speech clause of the first amendment to the United States Constitution, U.S.

Const. amend. I, and we reverse the conviction.

Willden placed written notices in several public restrooms stating that he wanted others interested in engaging in homosexual acts to call him. A Provo police officer called the posted telephone number and made arrangements to meet with Willden at his home. At the meeting, the officer arrested Willden for soliciting sexual conduct in violation of section 12.45.010.

Willden was tried before an Eighth Circuit Court judge sitting without a jury and was convicted. He appealed to the Fourth District Court, which affirmed. The district court rejected Willden's first amendment challenge to the ordinance, holding that he lacked standing to attack it as facially unconstitutional, that even if Willden had standing, the ordinance is constitutionally sound, and that, in any event, Willden's conduct fit squarely within the legitimate proscriptions of the ordinance.[1]

On appeal, Willden again mounts a facial challenge to the ordinance. He contends that the ordinance is overbroad in that its language plainly prohibits speech protected by the first amendment to the United States Constitution; consequently, Willden argues, the ordinance must be struck down in its entirety, even though a properly drawn statute might be constitutionally applied to prohibit his conduct.[2] Provo City ("the City") argues that Willden lacks standing to mount a facial challenge to the ordinance and, in any event, that the ordinance, if properly construed, does not prohibit speech protected by the first amendment.

We note the appropriate standard of review at the outset. Because the resolution of this case depends entirely on questions of law, we accord no particular deference to the rulings of the circuit and district courts on any of the points presented. *E.g., Scharf v. BMG Corp.*, 700 P.2d 1068, 1070 (Utah 1985).

■ The first question is whether Willden has standing to mount a facial challenge to the ordinance. At least in the free speech area, some of our prior cases on standing appear to have generally followed the rather narrow standing doctrines developed by the federal courts and may appear to be premised on the assumption that we are bound by those federal rules. *See, e.g., State v. Jordan*, 665 P.2d 1280, 1283–84 (Utah), *appeal dismissed sub nom., Fullmer v. Utah*, 464 U.S. 910, 104 S.Ct. 266, 78 L.Ed.2d 249 (1983). However, the federal rules on standing, as such, are not binding on state courts, and the article III constitutional restrictions and federalistic prudential considerations that have guided the evolution of federal court standing law are not necessarily relevant to the development of the standing rules that apply in Utah's state courts. *See, e.g., Jenkins v. Swan*, 675 P.2d 1145, 1149 (Utah 1983); *Utah*

---

1. Section 12.45.010 of the Revised Ordinances of Provo City provides:

   Unlawful Sex Acts. (a) It shall be unlawful for any person, in public or in a public place, to exhibit or expose his or her genitals, or to engage in, or to solicit another to engage in, any sexual conduct as defined herein.

   (b) "Sexual conduct" means human masturbation, sexual intercourse, or any touching of the covered or uncovered genitals, human female breast, pubic areas or buttocks of the human male or female, whether alone or between members of the same or opposite sex or between humans and animals, in an act of apparent sexual stimulation or gratification, which terms shall include, but not be limited to fellatio, cunnilingus, pederasty and bestiality.

   Section 12.44.020(16) defines "public place" as:

   A place accessible or visible to members of the public or to casual passersby; or any place where a fee or charge is made for entrance or membership.

2. Willden also cites the free speech guarantees of the Utah Constitution, Utah Const. art. I, § 15. However, he makes no argument that the state provision should be interpreted any differently than the federal provision, and he cites no authorities addressing the state provision. Therefore, we choose to confine our analysis to his arguments based on the first amendment. *See State v. Lafferty*, 749 P.2d 1239, 1247 n. 5 (Utah 1988); *State v. Bingham*, 684 P.2d 43, 45 (Utah 1984). We leave for another day the question of how we might treat the merits of a challenge to the ordinance under article I, section 15, which, by its terms, is somewhat broader than the federal clause. Article I, section 15 provides in relevant part: "No law shall be passed to abridge or restrain the freedom of speech or of the press." Utah Const. art. I, § 15.

*Restaurant Ass'n v. Davis County Bd. of Health,* 709 P.2d 1159, 1162–63 (Utah 1985); *cf. Society of Prof. Journalists v. Bullock,* 743 P.2d 1166, 1170–77 (Utah 1987) (developing special standing rules for persons seeking appellate review by writ rather than by direct appeal). As the United States Supreme Court recently stated:

> [T]he special limitations that Article III of the Constitution imposes on the jurisdiction of the federal courts are not binding on the state courts. [*See Pennell v. San Jose,* 485 U.S. 1, 108 S.Ct. 849, 855–56, 99 L.Ed.2d 1 (1988)]. The States are thus left free as a matter of their own procedural law to determine whether their courts may issue advisory opinions or to determine matters that would not satisfy the more stringent requirement in the federal courts that an actual "case" or "controversy" be presented for resolution.

*New York State Club Ass'n v. City of New York,* —— U.S. ——, 108 S.Ct. 2225, 2231 n. 2, 101 L.Ed.2d 1 (1988); *see also* L. Tribe, *American Constitutional Law* § 3–15, at 111–13 & n. 10 (2d ed. 1988); 13 C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure: Jurisdiction 2d* § 3531, at 339 n. 1 (2d ed. 1984) [hereinafter "Wright, Miller & Cooper"].

■ While we are not bound to adhere strictly to the warp and woof of federal standing rules, the federal courts have developed "useful principles" from which we can profitably borrow in fashioning standing rules suited to the needs of the courts of this state. *Utah Restaurant Ass'n,* 709 P.2d at 1162–63; *see, e.g., Jenkins,* 675 P.2d at 1149–50; *Society of Prof. Journalists,* 743 P.2d at 1175 n. 10. One aspect of general standing doctrine we share with the federal courts is the basic requirement that the complainant show " 'some distinct and palpable injury that gives him [or her] a personal stake in the outcome of the legal dispute.' " *Society of Prof. Journalists,* 743 P.2d at 1170 (quoting *Jenkins,* 675 P.2d at 1148). There is no question that Willden meets this standing test. He has been convicted and sentenced under the ordinance he challenges. He indisputably has standing to challenge the ordinance, at least as it has been applied to him.

However, Willden's challenge is more sweeping. He contends that the ordinance as written sweeps so broadly in its prohibitions that it criminalizes behavior protected by the first amendment and, therefore, should be struck down as being invalid on its face, even if his particular conduct could properly be criminalized. In support of his claim of standing to challenge the ordinance on its face—in effect, to assert the first amendment rights of others not before the court whose conduct could not properly be criminalized consistent with the first amendment—Willden relies on the federal first amendment "overbreadth" standing doctrine, designed to give standing to anyone who is subject to an overbroad statute that chills the exercise of first amendment rights of others. The rationale for granting such standing is that the constitutionally protected interests infringed by such statutes are so important that their protection need not await the perfect plaintiff. *See, e.g., New York v. Ferber,* 458 U.S. 747, 768–69, 102 S.Ct. 3348, 3360–61, 73 L.Ed.2d 1113 (1982); *cf. Jenkins,* 675 P.2d at 1150–51 (stating that we may allow standing to an otherwise inappropriate litigant if the issues are sufficiently important). However, an interest in comity and a concern for federalism have prompted the federal courts to limit this broadened standing to cases where a statute's deterrent effect on protected speech is real and substantial and the challenged statute is not " 'readily subject to a narrowing construction by the state courts.' " *State v. Jordan,* 665 P.2d at 1284 (quoting *Erznoznik v. City of Jacksonville,* 422 U.S. 205, 216, 95 S.Ct. 2268, 2276, 45 L.Ed.2d 125 (1975)); *accord Young v. American Mini Theatres, Inc.,* 427 U.S. 50, 59–60, 96 S.Ct. 2440, 2446–2447, 49 L.Ed.2d 310, *reh'g denied,* 429 U.S. 873, 97 S.Ct. 191, 50 L.Ed.2d 155 (1976).

The City assumes that the "overbreadth" doctrine applies in Utah courts, but argues that the ordinance in question can be narrowly construed to avoid impinging on first amendment freedoms while still prohibiting Willden's behavior. Assuming for pur-

poses of argument the general applicability of these federal first amendment standing principles under Utah law, *see State v. Jordan,* 665 P.2d at 1283–84; *Jenkins,* 675 P.2d at 1149–50, Willden's standing to challenge the ordinance on its face hinges upon whether the ordinance is susceptible to such a narrowing construction.[3]

■ This Court seeks to construe laws so as to carry out the legislative intent while avoiding constitutional conflicts. *In re a Criminal Investigation, 7th Dist. Ct. No. CS–1,* 754 P.2d 633, 640 (Utah 1988). However, in seeking a constitutional construction, we will not rewrite a statute or ignore its plain intent. *Id.* "A fundamental principle of statutory construction is that unambiguous language in the statute itself may not be interpreted so as to contradict its plain meaning." *Johnson v. Utah State Retirement Bd.,* 770 P.2d 93, 95, 91 Utah Adv.Rep. 8, 9 (1988).

■ The ordinance at issue purports to make illegal solicitation to engage in, as well as actually engaging in, a wide variety of conduct, much of which is constitutionally protected. The City contends that this ordinance can be construed so as to eliminate its patent constitutional inadequacies while still carrying out the expressed intent of the drafters. It has been suggested that the ordinance can be read to prohibit only public solicitation of "unlawful" sexual conduct to be carried out in a public place. We think such a construction would do impermissible violence to the clear language of the ordinance.

As Willden points out, the ordinance quite plainly prohibits a husband or wife from discreetly suggesting to his or her spouse in whispers while strolling in a public park that they later engage in sexual intercourse in the privacy of their own home. In addition, the solicitation of a wide variety of other activities the ordinance defines as "sexual conduct" is also prohibited. That definition includes, *inter alia,* "any touching of the covered or uncovered genitals, human female breast, pubic areas or buttocks of the human male or female ... between members of the ... opposite sex ... in an act of apparent sexual stimulation or gratification." To our knowledge, this state has no statutes that purport to make the wide variety of conduct described by the quoted language illegal between married couples or, for that matter, between unmarried adults, when carried out in private. It follows that a municipality's flat ban on the public solicitation of all such private activity is a content-based speech regulation that runs afoul of the first amendment. *See, e.g., American Booksellers Ass'n v. Hudnut,* 771 F.2d 323, 327–32, 334 (7th Cir.1985), *aff'd,* 475 U.S. 1001, 106 S.Ct. 1172, 89 L.Ed.2d 291, *reh'g denied,* 475 U.S. 1132, 106 S.Ct. 1664, 90 L.Ed.2d 206 (1986). No matter how we strain, we cannot find a legitimate construction of the ordinance's clear and explicit language that will bring it within constitutional limits. The ordinance plainly is one that involves substantial overbreadth and is invalid on its face under the *New York v. Ferber* rationale. 458 U.S. at 768–72, 102 S.Ct. at 3360–63. It also follows that since the ordinance cannot be given a limiting construction that will apply only to unprotected activity, Willden has standing to attack it facially. *See, e.g., Secretary of State of Maryland v. Joseph H. Munson Co.,* 467 U.S. 947, 954–59, 104 S.Ct. 2839, 2845–48, 81 L.Ed.2d 786 (1984); *see also Brockett v. Spokane Arcades, Inc.,* 472 U.S. 491, 503–04, 105 S.Ct. 2794, 2801–02, 86 L.Ed.2d 394 (1985) (stating that a substantially overbroad law may not be enforced against anyone).

---

3. Only if the ordinance is susceptible to such a narrowing construction need we consider an issue our cases such as *Jordan* have yet to fully address: whether this precondition to overbreadth standing makes sense in the context of our emerging state law of standing.

In reviewing the federal cases, it is apparent that to some degree, their restrictive standing rules reflect a desire to avoid undue federal interference with state government and a desire to give deference to the final authority of state courts to construe state statutes in a manner that may eliminate federal constitutional defects. *See* Wright, Miller & Cooper, § 3531.3, at 412 & n. 20. A state court forging its own law of standing would, of course, have a significantly different perspective on those federalism and comity concerns.

We sympathize with the City's interest in maintaining decorous public conduct, particularly its interest in preventing the publicly offensive behavior that led to Willden's arrest. Unfortunately, in its zeal to eliminate such offensive behavior, the City has chosen to fashion a tool that sweeps far too deeply into the protected province of the first amendment. *See, e.g., State v. Tusek*, 52 Or.App. 997, 630 P.2d 892 (1981) (holding that an Oregon statute that clearly criminalized public solicitation of private noncriminal sexual activity violated the first amendment).

The ordinance is struck down as unconstitutional, and the conviction is reversed.

STEWART and DURHAM, JJ., concur.

HOWE, Associate Chief Justice (dissenting):

I dissent. The majority concludes that Willden has standing to mount a facial challenge to the ordinance, both as to his own rights and as to the rights of third parties. Despite its position that federal jurisdiction and standing requirements are not binding on the states, the majority nevertheless recognizes Utah cases which relied on the "useful principles" developed by the federal courts. *Utah Restaurant Ass'n v. Davis County Bd. of Health*, 709 P.2d 1159, 1162–63 (Utah 1985) (federal precedent on standing of associations). The majority cites the guideline that such broadened standing to third parties is limited to a statute's deterrent effect on legitimate expression which is "both real and substantial" and not "readily subject to a narrowing construction by the state courts." *See Erznoznik v. City of Jacksonville*, 422 U.S. 205, 216, 95 S.Ct. 2268, 2276, 45 L.Ed.2d 125, 135 (1975). If both these conditions do not occur, the litigant is not permitted to assert the rights of third parties. *Young v. American Mini–Theatres*, 427 U.S. 50, 61, 96 S.Ct. 2440, 2448, 49 L.Ed.2d 310, 320, *reh'g denied*, 429 U.S. 873, 97 S.Ct. 191, 50 L.Ed.2d 155 (1976); *see Broadrick v. Oklahoma*, 413 U.S. 601, 610, 93 S.Ct. 2908, 2915, 37 L.Ed.2d 830, 839 (1973).

Generally, assigning generalized or hypothetical complaints of third parties who are not before the court is an insufficient ground upon which standing can be predicated. *See Baird v. State*, 574 P.2d 713, 715–16 (Utah 1978); *Society of Prof. Journalists v. Bullock*, 743 P.2d 1166, 1173 (Utah 1987). The general rule is that constitutional rights are personal and may not be asserted vicariously. *Broadrick v. Oklahoma*, 413 U.S. at 610, 93 S.Ct. at 2914. The overbreadth doctrine is an exception to that general rule. It permits parties in cases involving challenges to governmental restrictions on noncommercial speech to contend that the regulation is invalid because of its effect on the first amendment rights of others (third parties) who are not presently before the court. *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 508, 102 S.Ct. 1186, 1198, 71 L.Ed.2d 362, 377 (White, J., concurring), *reh'g denied*, 456 U.S. 950, 102 S.Ct. 2023, 72 L.Ed.2d 476 (1982).

"Whether the [defendant] may make use of the overbreadth doctrine depends, in the first instance, on whether or not [he] has a colorable claim that the ordinance infringes on constitutionally protected, noncommercial speech of others." *Id.* at 508, 102 S.Ct. at 1198. Thus, a defendant who claims standing by overbreadth is permitted to assert, where truly warranted, the facial unconstitutionality of laws or regulations which may create a "chilling effect" on the freedom of expression of persons not before the court, even though the laws or regulations could be constitutionally applied to the parties in the case. *Bigelow v. Virginia*, 421 U.S. 809, 817, 95 S.Ct. 2222, 2230, 44 L.Ed.2d 600, 609 (1975); *Broadrick v. Oklahoma, supra* at ——; *New York v. Ferber*, 458 U.S. 747, 767, 102 S.Ct. 3348, 3360, 73 L.Ed.2d 1113, 1129 (1982); *State v. Jordan*, 665 P.2d 1280, 1284 (Utah), *appeal dismissed sub nom. Fullmer v. Utah*, 464 U.S. 910, 104 S.Ct. 266, 78 L.Ed.2d 249 (1983). Nevertheless, the overbreadth doctrine is "strong medicine," and we have "employed it with hesitation, and then only as a last resort." *State v.*

*Jordan,* 665 P.2d 1280, 1283 (Utah 1983); *Broadrick v. Oklahoma,* 413 U.S. at 613, 93 S.Ct. at 2916, 37 L.Ed.2d at 841.

The instant case does not merit the invoking of the overbreadth exception. Defendant has not demonstrated how prohibiting defendant's public solicitation of unlawful sexual conduct creates a "real" and "substantial" deterrent effect upon the first amendment freedoms of third parties who are not before this Court. Defendant's claim that the ordinance could be stretched to include a husband's patting his spouse on the buttocks in public does not create the required "real" and "substantial" deterrent. In fact, this adverse impact is both "abstract and academic" at best. *Cf. Society of Prof. Journalists v. Bullock,* 743 P.2d at 1174. There are, however, a substantial number of situations to which the ordinance might be validly applied. *Parker v. Levy,* 417 U.S. 733, 760, 94 S.Ct. 2547, 2563, 41 L.Ed.2d 439, 460 (1974).

Furthermore, we should recognize the legitimate interest that a municipality has to make rules and regulations which are "necessary and proper to improve the morals, preserve the health, peace and good order among its citizenry." *Redwood Gym v. Salt Lake County Commission,* 624 P.2d 1138, 1143 (Utah 1981). The majority unfortunately adopts Willden's argument that the ordinance "quite plainly" prohibits a husband or wife from discreetly suggesting to his or her spouse in public to later engage in sexual conduct in the privacy of their home. This scenario is used to illustrate that the prohibition against public solicitation does not apply merely to "unlawful" sexual conduct to be carried out in a public place, but to all solicitations in public of sexual conduct, whether lawful or unlawful. The majority argues that this is the clear intent of the ordinance.

Such a construction is farfetched. As the majority must realize, the ordinance is directed toward public solicitation of *unlawful* sexual conduct between persons not married to each other, which would exclude the husband-wife scenario. The ordinance obviously was not intended to prohibit law-ful communication between spouses, nor does it sweep within its ambit protected expression. *State v. Haig,* 578 P.2d 837, 839 (Utah 1978). Further, the ordinance which defines "sexual conduct" is substantially similar to Utah Code Ann. § 76–10–1201(7) (1953), which was upheld by this Court as constitutional in *State v. Haig.*

The majority's acceptance of Willden's specious argument is particularly surprising in view of the established policy of this Court to construe statutory provisions whenever possible in a way to avoid invalidating them on constitutional grounds. *Greaves v. State,* 528 P.2d 805, 806–07 (Utah 1974). Recently, we have acted to fill constitutional voids in legislation which omitted certain provisions fundamental to the protection of a defendant's rights in a capital proceeding. In *State v. Lafferty,* 749 P.2d 1239, 1260 (Utah 1988), this Court imposed the requirement that juries be instructed to find that previous crimes of the defendant which have not resulted in convictions, introduced at a penalty phase, be proven beyond a reasonable doubt. In *State v. Wood,* 648 P.2d 71, 83–84 (Utah), *cert. denied,* 459 U.S. 988, 103 S.Ct. 341, 74 L.Ed.2d 383 (1982), we construed Utah Code Ann. § 76–3–207 (1953) to require proof beyond a reasonable doubt at the penalty phase of a capital case that the aggravating circumstances outweighed the mitigating circumstances, even though no specific burden of persuasion had been provided for by the legislature in the statute. We went to great lengths in *In re Criminal Investigation, 7th District Court No. CS–1,* 754 P.2d 633, 640–41 (Utah 1988), to save the constitutionality of the Subpoena Powers Act by reading into it a host of new provisions which simply were not put there by the legislature. These new provisions included the giving of a *Miranda*-type warning to the person subpoenaed, a target warning to him if appropriate, record-keeping requirements by the court issuing the subpoena, and restrictions upon secrecy orders. All of this engrafting was done by a majority of this Court in order to uphold the constitutionality of the Subpoena Powers Act. In a strange turn-about, the majority of this Court now refuses to take a

single step to import an obvious, common-sense requirement into an ordinance to save its constitutionality.

This Court's role as constructionist and interpreter of the scope of an ordinance or statute is neither new nor novel. *See Musser v. Utah*, 333 U.S. 95, 98, 68 S.Ct. 397, 398, 92 L.Ed. 562, 565 (1948); *Salt Lake City v. Savage*, 541 P.2d 1035, 1037 (Utah 1975), *cert. denied*, 425 U.S. 915, 96 S.Ct. 1514, 47 L.Ed.2d 766 (1976); *State v. Packard*, 122 Utah 369, 375, 250 P.2d 561, 563 (1952). For example, in *Savage*, the defendant was convicted of violating a city ordinance prohibiting loitering. The defendant attacked the constitutionality of the ordinance by contending that its wording was overbroad and vague. 541 P.2d at 1036. We held that the party alleging the unconstitutionality of an ordinance or statute must overcome three hurdles, as follows:

(a) A legislative enactment is presumed to be valid and in conformity with the constitution;

(b) [The statute or ordinance] should not be held to be invalid unless it is shown beyond a reasonable doubt to be incompatible with some particular constitutional provision, and;

(c) The burden of showing invalidity of an ordinance or statute is upon the one who makes the challenge.

541 P.2d at 1037 (footnotes omitted).

In summary, defendant lacks standing to attack the constitutionality of the ordinance under the overbreadth doctrine because he has not shown a "real and substantial" abridgment of other innocent third persons' first amendment rights. Also, the ordinance is subject to a common-sense limiting construction by this Court to prohibit only public solicitation of *unlawful* sexual conduct described in section (b). Additionally, we should recognize that municipalities may well have a significant governmental interest in imposing reasonable limitations on the time, place, and manner of presentation of some expressive or communicative conduct. *Young v. American Mini–Theatres*, 427 U.S. at 64, 96 S.Ct. at 2449, 49 L.Ed.2d at 322; *see also California v. LaRue*, 409 U.S. 109, 118, 93 S.Ct. 390, 397, 34 L.Ed.2d 342, 352 (1972), *reh'g denied*, 410 U.S. 948, 93 S.Ct. 1351, 35 L.Ed.2d 615 (1973). Lastly, defendant has not overcome the burden imposed by *Savage*.

The conviction should be affirmed.

HALL, C.J., concurs in the dissenting opinion of Associate Chief Justice HOWE.